## WHEELER v. UNITED STATES.

## SHAW v. UNITED STATES.

## WHEELER v. MURCHIE, UNITED STATES MARSHAL.

## SHAW v. SAME.

ERROR TO AND APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

Nos. 658, 659, 660, 661. Submitted December 4, 1912.—Decided January 6, 1913.

An officer of a corporation is not subjected to an unreasonable search or seizure by a subpœna to produce without *ad testificandum* clause the books and papers of that corporation, nor is he subjected to self-incrimination by such subpœna and an order to produce thereunder or deprived of his liberty without due process of law by being committed for contempt for failure to comply with such order. *Wilson* v. *United States*, 221 U. S. 361.

Books of a corporation are not the private books of any of the officers and do not become so by the dissolution of the corporation and the transfer of the books to one of such officers.

THE facts, which involve the validity under the due process and search and seizure provisions of the Constitution of a *subpœna duces tecum* to an officer of a corporation to produce books and papers of the corporation, are stated in the opinion.

*Mr. Nathan Matthews, Mr. William G. Thompson* and *Mr. Romney Spring* for Wheeler and Shaw:

The orders of commitment and the imprisonment thereunder have deprived the plaintiffs in error and appellants of their liberty without due process of law.

The subpœna imposed no legal obligation on the corporation to produce the books and papers.

Even if the corporation had had any sort of existence at the time the subpœna was issued, it would have been under no legal obligation to produce the books and papers therein described.

A natural person who had neither the title nor possession of books and papers could not by any known form of procedure be put under a legal obligation to produce them. *Ballman* v. *United States*, 200 U. S. 186, 194.

The corporation having been lawfully dissolved and its charter annulled had thus ceased to be subject to the State's visitatorial powers and had no longer any special privileges, or franchises, or right to do business as a corporation. *Hale* v. *Henkel*, 201 U. S. 43, 74–75.

If the subpœna imposed no legal obligation upon the corporation to produce any books and papers, it imposed no legal obligation upon Wheeler and Shaw individually to do so.

The only obligation imposed upon Wheeler and Shaw by the serving upon them of a summons addressed to the corporation was an obligation in their official capacity depending wholly upon the existence of an obligation on the part of the corporation itself to produce the books and papers.

The summons ran directly to the corporation, and not to Wheeler and Shaw.

The service made upon Wheeler and Shaw in their official capacity as officers of the corporation was simply a method of enforcing the assumed obligation of the corporation, and not any obligation of theirs personally. *Commissioners* v. *Sellew*, 99 U. S. 624, 627.

The duty imposed upon them by the service was secondary, not primary. In such a case the obligation of the individual served is derivative and secondary, and not individual and primary. *Wilson* v. *United States*, 221 U. S. 361; *Dreier* v. *United States*, 221 U. S. 394; *Consolidated Rendering Co.* v. *Vermont*, 207 U. S. 541; *Balti-*

more & Ohio R. R. v. Int. Com. Comm., 221 U. S. 612, 622. And see In re American Sugar Refining Co., 178 Fed. Rep. 109; In re Bornn Hat Co., 184 Fed. Rep. 506, 508.

Where the summons is addressed to the corporation itself, then, independently of that constitutional right of the individual custodian, there can be no obligation on him to produce them unless it is first shown that the subpœna imposes an obligation upon the corporation itself to produce them.

The one advantage which the Government sought to secure by choosing a summons addressed to the corporation itself rather than one addressed to the individual custodian illustrates the distinction. For a corporation is not protected by the Fifth Amendment, and a natural person is. Hale v. Henkel, 201 U. S. 43; The Bornn Hat Co. v. United States, 223 U. S. 713, affirming 184 Fed. Rep. 506.

If the books and papers described in the subpœna were the private property of appellants, the court's order requiring their production before the grand jury, and the judgments of contempt based upon the disobedience of that order, violated their rights under the Fifth Amendment not to be compelled in any criminal case to be a witness against oneself, and under the Fourth Amendment to be exempt from unreasonable searches and seizures. Boyd v. United States, 116 U. S. 616; Entick v. Carrington, 19 How. State Trials, 1029; Hillman v. United States, 192 Fed. Rep. 264, 270; Matter of Harris, 221 U. S. 274.

The subpœna was unreasonably sweeping, and this defect was seasonably urged by Wheeler and Shaw on their own behalf.

If for this reason the subpœna was void as against the corporation, it could not be valid as against Wheeler or Shaw.

*The Solicitor General* and *Mr. Assistant Attorney General Harr* for the United States and the United States Marshal:

The Fifth Amendment has no application because appellants were not called as witnesses.

The immunity granted by the Fifth Amendment that no person "shall be compelled in any criminal case to be a witness against himself," means testimonial compulsion. 3 Wigmore on Evidence, § 2263.

A person who merely produces books and papers does not vouch for their contents, and when, as here, they are the records of a corporation and tell its story, not his, he is not even in effect made a witness against himself by being compelled to produce them.

The order to produce the books of the corporation was not an invasion of appellants' privacy within the meaning of the Fourth Amendment.

The Fourth Amendment, as construed in *Boyd* v. *United States*, 116 U. S. 616, merely protects a person against an invasion of his privacy, when such invasion will operate to incriminate him. But it is no invasion of a man's privacy to compel him to produce the books and papers of a corporation, whose acts, as above stated, are necessarily subject to investigation by the State. *Wilson* v. *United States*, 221 U. S. 374.

While the corporation may be dissolved, its records are still subject to examination for any purpose connected with the winding up of its affairs (Law of Massachusetts, 1903, chap. 437, § 52); and see the act of March 25, 1912, chap. 313, pp. 210, 232.

The possession of legal title to the corporate books and papers by appellants does not affect the character of those documents. They are none the less the records of the corporation because the legal title thereto has passed to Wheeler and Shaw as individuals. *In re Grant*, 198 Fed. Rep. 708.

Legal title is immaterial upon a subpœna to produce books or papers, because the court is entitled to them as against anyone for the time being, and the proceeding is not one to try title. The person subpœnaed cannot refuse to produce the papers sought if he has not title, and if he has title as well as possession, he is the better able to respond to the subpœna.

The rule, both at law and in equity, that a person cannot be compelled to produce books and papers to discover matters which may incriminate him, is subject to the qualification here contended for. See § 724, Rev. Stat.

The rule in equity that no man need discover matters tending to criminate himself, or to expose him to a penalty or forfeiture, is subject to an exception in respect to frauds and also where fiduciary relations exist. Adams' Equity, 8th ed., p. 4; *State* v. *Maury*, 2 Del. Ch. Rep. 141, 158; *Green* v. *Weaver*, 1 Sim. Rep. 404.

Sound public policy forbids the extension of the privilege against self-incrimination to a case involving the production of corporate records. 3 Wigmore, § 2251, p. 3102.

MR. JUSTICE DAY delivered the opinion of the court.

These cases arise from the following facts: On April 12, 1912, the Federal grand jury in Boston was investigating whether Warren B. Wheeler and Stillman Shaw, plaintiffs in error in Nos. 658 and 659 and appellants in Nos. 660 and 661, had, by means of a certain corporation known as Wheeler & Shaw, Incorporated, or otherwise, violated § 215 of the act of Congress of March 4, 1909, 35 Stat. 1088, 1130, c. 321, making it a crime to use the mails of the United States for a scheme to defraud, which crime is punishable by fine or imprisonment or both. On the same day a *subpœna duces tecum*, without *ad testificandum* clause, was issued, summoning the corporation to appear

before the grand jury and produce all the cash books, ledgers, journals and other books of account of the company, and all copies of letters and telegrams of Wheeler & Shaw, Incorporated, whether signed or purporting to be signed by the corporation or by its president or treasurer in its behalf, for and covering the period from October 1, 1909, to January 1, 1911; all the aforesaid books and copies of letters and telegrams to be produced before the grand jurors under the penalties of law. The subpœna was served on Wheeler as treasurer, and on Shaw as president, of the corporation. They appeared before the grand jury, without any of the books or correspondence, as required in the subpœna, however; asked to be sworn for the purpose of explaining why they had not brought them, and left with the grand jurors papers containing the following statement of their reasons for the non-production of the books, etc. (the records are the same, *mutatis mutandis*, in the Wheeler case and the Shaw case):

"To the Grand Jurors of the District Court of the United States for the District of Massachusetts.

"Gentlemen: There was served upon me at 12:50 P. M. to-day, April 12, 1912, a subpœna addressed to Wheeler & Shaw, Inc., a corporation doing business at Boston, in said District, and calling upon that corporation to produce before you, presumably through me, 'all cash books, ledgers, journals, and other books of account of said Wheeler & Shaw, Inc., for and covering the period between October 1, 1909, and January 1, 1911, all copies of letters and telegrams of Wheeler & Shaw, Inc., signed or purporting to be signed by said Wheeler & Shaw, Inc., or by its president or its treasurer in behalf of said Wheeler & Shaw, Inc., during the months of October, November and December, 1909, and the entire year of 1910; all the aforesaid books, copies of letters, and telegrams to be produced

before the Grand Jurors of said District Court in the matter of an alleged violation of the laws of the United States by Warren B. Wheeler and Stillman Shaw.'

"I desire to avail myself of what I understand to be my right to state to you under oath my reasons for not producing any books, ledgers, or other papers or documents in response to said summons. My reasons are:

"First: That I have not in my possession or custody any cash books, ledgers, journals, or any of the other books or things described in said subpœna which belong to Wheeler & Shaw, Inc., or are in my possession as an officer or agent of Wheeler & Shaw, Inc. The only cash books, ledgers, journals, and other books, papers, and things to which the aforesaid description in said subpœna could apply are the personal property of myself and Stillman Shaw, and are in our personal possession, and are not in the possession of either of us as officers or agents of any corporation.

"Second: Even were the fact not as stated above, I am advised that the language of said subpœna quoted above is so broad, sweeping, and lacking in particularity as to constitute a violation of the rights of any party to whom a subpœna is addressed to be exempt from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution.

"Third: Whether addressed to said corporation or to me personally, I am advised that said subpœna violates the rights secured to me by the Fifth Amendment to the Constitution of the United States not *to* be a witness against myself in any criminal case.

"I make this statement in good faith, and not intending any disrespect to the Grand Jury, or to the officers of the Government, and I venture to remind the Grand Jury that I am entitled under the laws of the United States not to have any inferences drawn against me by reason of the action I have taken in this matter. It is one thing to pro-

duce private books and papers in a proceeding where there is an opportunity to explain them and to examine and cross-examine witnesses concerning them; but the situation in an *ex parte* proceeding is so different that I feel sure the Grand Jury will feel that I am justified in standing upon my constitutional rights in this matter.

"WARREN B. WHEELER."

The grand jurors on April 13, 1912, filed in the District Court a paper called a petition for attachment for contempt, in which they prayed that Wheeler and Shaw be ordered to produce the books and copies of letters and telegrams, and upon failure or refusal be adjudged guilty of contempt. Wheeler and Shaw appeared, filed motions to dismiss, which were denied, and then filed sworn answers. The cases were heard by the district judge on the grand jurors' petitions, the answers and certain agreed facts. At the close of the hearing the court ruled that the case was governed by *Wilson* v. *United States*, 221 U. S. 361, and ordered Wheeler and Shaw to produce the books and papers described in the subpœna. Final orders were entered on April 18, 1912, adjudging them in contempt and committing them to the custody of the marshal until, by producing before the grand jury the books and copies of letters and telegrams they should cease to obstruct and impede the corporation known as Wheeler & Shaw, Incorporated, from complying with the *subpœna duces tecum* or otherwise purge themselves of their contempt.

From these judgments Wheeler and Shaw sued out writs of error, which constitute cases Nos. 658 and 659. They also filed petitions for writs of *habeas corpus* against the marshal, and from the orders denying the petitions they appealed to this court, and these cases constitute Nos. 660 and 661.

Upon the hearing the district judge made certain findings of fact, as follows:

"1. A subpœna, of which a copy with a copy of the officer's return thereon is annexed to said petition, was served upon the defendant on the twelfth day of April, A. D. 1912.

"2. The corporation mentioned in the statute of the Commonwealth of Massachusetts which took effect on March 25, 1912, being Statute 1912, Chapter 313, and therein described by the words 'Wheeler and Shaw, Inc.,' is the same corporation that is mentioned in said subpœna. [By the statute the corporation was dissolved and its charter annulled.]

"3. On the afternoon of said April 12th the defendant appeared before said Grand Jury in response to said subpœna, and thereupon the questions, of which a copy is annexed to said petition, were put to him, and answers, as stated in the copy of the same annexed to said petition, were made by him, and the written statement, of which a copy is annexed to said petition, was left by him with said Grand Jury. The defendant did not bring with him or have before said Grand Jury any of the books and copies of letters and telegrams described in said subpœna. He did, when before said Grand Jury, ask to be sworn for the purpose of stating the reasons why he had not brought with him any of said books and copies of letters and telegrams; but he was not sworn. He did not waive or intend to waive his claim of a right to be sworn before said Grand Jury for the purpose aforesaid.

"4. Some time in the month of April, 1911, said corporation Wheeler & Shaw, Inc., ceased to do business, and shortly afterwards the legal title and possession of all the books and papers of said corporation then belonging to it, including all the books and copies of letters and telegrams described in the subpœna, were lawfully transferred to the defendant and to one Stillman Shaw as tenants in common, and have ever since remained in the defendant and said Shaw. Prior to the time when said statute of

1912, Chap. 313 [dissolving the corporation], took effect, the defendant was the treasurer of said corporation, and said Shaw was the president thereof, and neither the defendant nor said Shaw has ever resigned his said office in said corporation."

Wheeler and Shaw also took bills of exceptions, in which it appears that the cases were heard upon the petitions, sworn answers and certain facts admitted by counsel in open court, which are set out and incorporated in the finding of fact appearing of record, and in which it is further made to appear that defendants at the hearing before the court repeated the claim set up by them before the grand jury that a compliance with the *subpœna duces tecum* would violate their right to be secure against unreasonable searches and seizures under the Fourth Amendment of the United States Constitution, and their right not to be compelled to be witnesses against themselves in any criminal case under the protection of the Fifth Amendment. They also asked the court to rule that such order would violate their rights under the Massachusetts constitution. The court overruled all of the objections of defendants and held, as a matter of law, that the legal effect of dissolving the corporation and transferring to the defendants the books and copies of letters and telegrams described in the subpœna had not been to make the books and papers the private property of the defendants in such sense as to exempt them from producing such books and correspondence before the grand jury, as required by the subpœna, and that the facts of the cases brought them within the rule of this court in *Wilson* v. *United States, supra.*

The defendants reduce their contentions in this court to two propositions, namely:

"I. The orders of commitment and the imprisonment thereunder have deprived the plaintiffs in error and appellants [referred to in this opinion as defendants] of their liberty without due process of law.

"II. If, as is agreed, the books and papers described in
the subpœna were the private property of the plaintiffs
in error and appellants, then the court's order requiring
their production before the grand jury, and the judgments
of contempt based upon the disobedience of that order,
violated the right of each plaintiff in error and appellant
under the Fifth Amendment not to be compelled in any
criminal case to be a witness against himself, and the
right of each under the Fourth Amendment to be exempt
from unreasonable searches and seizures."

The proposition that the orders of the court of commit-
ment and imprisonment deprived defendants of their
liberty without due process of law seems to be based upon
the contention that the corporation was in no way obliged
to obey the subpœna, and that, after its dissolution, it
was not subject to any subpœna requiring the production
of books and papers before the grand jury. But we do
not think there is any merit in this objection. If the
Government had the legal right to demand the production
of the books and papers in question, with a view to the
investigation of the alleged offense of Wheeler and Shaw
in the proceedings before the grand jury, whether the
subpœna was drawn in proper form or not or whether the
corporation, in view of its dissolution, could have been
compelled to comply with its requirements, in the attitude
which the case has taken, is immaterial. It is apparent
from the facts already recited that Wheeler and Shaw were
required by the *subpœna duces tecum* to bring before the
grand jury the books and papers of the corporation which
had been dissolved and that they so understood the sub-
pœna; that they were in possession of such books and
papers which could be by them produced before the
grand jury, and that before the order of commitment
was made the defendants were allowed a full hearing in a
court of competent jurisdiction. No objection was taken
to the technical form of the subpœna in directing it to

the corporation and not the individuals. There is nothing to show it was so broad as to be objectionable, as was indicated of the subpœna in *Hale* v. *Henkel*, 201 U. S. 43. The defendants, in possession of the books and papers, were denying the right of the court to compel their production because of the dissolution of the corporation; because the title and possession of the books and papers had passed to the defendants individually and were their private property as tenants in common, and they had no possession or custody of the documents as officers of the corporation, and because, as against them, the compulsory production of such books and correspondence would violate their rights under the Fourth and Fifth Amendments to the Constitution of the United States.

We think the questions of substance now presented are whether the rights of the defendants as individuals to be exempt from unreasonable search and seizure of their property and from being compelled to be witnesses against themselves would be violated by the compulsory production of the documents in question.

We are of opinion that this case is virtually ruled by *Wilson* v. *United States*, *supra*. In that case it was held that there was no unreasonable search or seizure where the officer of a corporation, whose guilt of an offense against the laws of the United States was under investigation, was compelled to produce books and papers of the corporation of which he was president, because as against the corporation, the true owner of the books and papers, their production might lawfully be compelled, and that there was no self-incrimination of such officer, because he was not compelled to produce his private books, but the books of the corporation, which were not within the protection given to the private books and papers of an individual. We are unable to see that this case differs in principle from that one. It is true the corporation in the present case had ceased to exist, but

its books and papers were still in existence and were still impressed with the incidents attending corporate documents. Wheeler and Shaw had been officers of the corporation and the books of the company had before the dissolution been made over to them; but this did not change the essential character of the books and papers or make them any more privileged in the investigation of crime than they were before.

Wheeler and Shaw, it may be admitted, could no longer be officers of the corporation, although the record shows that they had never resigned their positions. The corporation, however, had gone out of existence, leaving its books and papers in the possession of the defendants, and, it may be conceded, for many purposes such books belonged to them, but, as was held in the *Wilson Case*, the privilege of the Constitution against unreasonable searches and seizure does not protect against the lawful examination in due course of books of this character; nor does the privilege of individuals against self-incrimination in the production of their own books and papers prevent the compulsory production of the books of a corporation with which they happen to be, or have been associated. It was the character of the books and papers as corporate records and documents which justified the court in ordering their production, as this court ruled in the *Wilson Case*. We think the character of the books was not changed for this purpose, because the corporation had gone out of existence after making over the books to the defendants. Such books and papers still remained subject to inspection and investigation, and no constitutional right of the defendants was violated when, being found in possession of the documents, they were required to produce them for inspection by the grand jury. It follows that the judgments of commitment in Nos. 658 and 659 and the orders appealed from in Nos. 660 and 661 should be

*affirmed.*