CUDMORE v. BOWLES, Adm'r, Office of
Price Administration.

No. 8735.

United States Court of Appeals
District of Columbia.

Decided Nov. 6, 1944.

Writ of Certiorari Denied Feb. 5, 1945.
See 65 S.Ct. 588.

Mr. Thomas H. Patterson, of Washington, D. C., with whom Mr. Paul E. Jamieson, of Washington, D. C., was on the brief, for appellant.

Mr. Fleming James, Jr., Director, Litigation Division, of Washington, D. C., with whom Messrs. Thomas I. Emerson, Deputy Administrator for Enforcement, David London, Chief, Appellate Branch, Abraham Glasser, Special Appellate Attorney, A. M. Dreyer, Attorney, John L. Laskey, District Enforcement Attorney, and Carl W. Berueffy, Assistant Enforcement Attorney, all of the Office of Price Administration, all of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

MILLER, Associate Justice.

Auth-Loffler, Inc., is a Delaware corpo-ration engaged in the business of selling meats at wholesale in the District of Columbia. Prior to January 29, 1944, appellee, Chester Bowles, as Administrator of the Office of Price Administration, having decided that an investigation was proper to

determine whether Auth-Loffler, Inc., its agents and employees had or had not complied with the provisions of the Emergency Price Control Act and regulations thereunder, and to assist him in the administration and enforcement of the Act, an investigator, George L. Thomas, was directed to make the investigation. Thomas, acting pursuant to his instructions, called at the corporation's place of business, presented his credentials to appellant, Arthur Cudmore, Secretary of Auth-Loffler, Inc., and requested permission to inspect all invoices kept by the corporation showing its sales and purchases of pork and pork products from July 1, 1943 to October 30, 1943. Permission was refused. On January 29, 1944, Bowles issued a subpoena duces tecum directing appellant to appear and testify and to produce the invoices at a specified office of the Price Administration. Personal service of the subpoena was made upon appellant but he failed to respond to its directions. Whereupon appellee filed an application in the District Court setting out these and other facts and requesting that the court require appellant to produce the invoices described in the subpoena. He filed, also, a motion to require compliance with the subpoena. Appellant answered and filed a responsive affidavit. Issue was joined upon the motion to compel compliance with the subpoena and upon appellant's motion to dismiss. The court, after a hearing, entered a final judgment denying the motion to dismiss and ordering appellant either to permit inspection or to produce the invoices.

On this appeal, it is contended that the order of the Administrator violated appellant's constitutional rights, because of penalties which might have been imposed upon him or upon the corporation, of which he is secretary and owner of one-half its capital stock, as a result of disclosures which might have been made in these invoices, of possible innocent and unintentional violations of price ceilings. It must be noted in the first place that this contention is beside the point, as no more is now involved than the judgment and order of the District Court. This order is in no respect unreasonable. It merely carries out the plain purpose of the Emergency Price Control Act.[1]

But, even assuming that appellant's attack in this court were upon the order of the Administrator rather than upon the judgment of the District Court, it would be equally without merit.[2] Section 202(a) of the Emergency Price Control Act provides: "The Administrator is authorized to make such studies and investigations and to obtain such information as he deems necessary or proper to assist him in prescribing any regulation or order under this Act, or in the administration and enforcement of this Act and regulations, orders, and price schedules thereunder." Section 202(e) provides: "In case of contumacy by, or refusal to obey a subpoena served upon, any person referred to in subsection (c), the district court for any district in which such person is found or resides or transacts business, upon application by the Administrator, shall have jurisdiction to issue an order requiring such person to appear and give testimony or to appear and produce documents, or both; and any failure to obey such order of the court may be punished by such court as a contempt thereof. The provisions of this subsection shall also apply to any person referred to in subsection (b), and shall be in addition to the provisions of section 4(a)." The regulation,[3] with the enforcement of which the Administrator's order was concerned in the present case, prescribes the maximum prices at which pork and pork products may be sold or purchased and requires that records thereof be kept. The information sought by the Administrator's subpoena was clearly pertinent in the enforcement of the Act and the applicable regulation. It should have been obeyed without recourse to the court.

The judgment and order of the District Court are not unreasonable because of shortness of time allowed for compliance. The order was filed on March 10, 1944; it gave appellant until March 13, 1944 to get ready for inspection in its own place of business, *or in the alternative* to produce the invoices on or before April 13, 1944.[4] But this is only a small part of the picture. The Administrator's first request for inspection was made prior to January 29, 1944. Neither is there any suggestion

---

[1] 50 U.S.C.A.Appendix § 901 et seq.

[2] See generally, Sherwood, The Enforcement of Administrative Subpoenas, 44 Col. L.Rev. 531, 534.

[3] Sections 1364.22, 1364.27, Revised Maximum Price Regulation No. 148, 7 Fed.Reg. 8609.

[4] A month's time was specified in appellant's affidavit as the time required to segregate the invoices.

that a request for additional time would not have received sympathetic consideration.[5]

■ The judgment and order are not unreasonable, either, because "approximately, twenty thousand invoices of sales and purchases, covering a period of four months," were involved, or because "invoices of sales and purchases of pork and pork products were filed, unsegregated, with sales and purchases of meats and meat products other than pork, thereby making compliance . . . all the more difficult." Appellant has misconceived the law of the case upon which he relies to support this contention. Hale v. Henkel [6] does hold that a subpoena duces tecum may be unreasonable if it is too sweeping in its terms. But it does not hold that an order duly authorized by Act of Congress, which calls for production, as an alternative to inspection, of records—carefully limited as to the period of time covered and clearly pertinent to a proper inquiry, as was true in the present case—is in any sense unreasonable. Subsequent decisions of the Supreme Court have made this abundantly plain.[7]

■ No privilege against self-incrimination was violated or threatened in this case, as respects either appellant individually or the corporation [8] of which he is secretary.

We have examined, carefully, all appellant's contentions and find them to be without merit.

Affirmed.

---

[5] See Hale v. Henkel, 201 U.S. 43, 70, 26 S.Ct. 370, 377, 50 L.Ed. 652: "Had the witness relied solely upon the first ground, doubtless the court would have given him the necessary time."

[6] 201 U.S. 43, 77, 26 S.Ct. 370, 380, 50 L.Ed. 652: "Of course, in view of the power of Congress over interstate commerce, to which we have adverted, we do not wish to be understood as holding that an examination of the books of a corporation, if duly authorized by act of Congress, would constitute an unreasonable search and seizure within the Fourth Amendment."

[7] Nelson v. United States, 201 U.S. 92, 26 S.Ct. 358, 50 L.Ed. 673 (decided during the same term as Hale v. Henkel); Consolidated Rendering Co. v. Vermont, 207 U.S. 541, 554, 28 S.Ct. 178, 52 L.Ed. 327, 12 Ann.Cas. 658; Brown v. United States, 276 U.S. 134, 142, 143, 48 S.Ct. 288, 72 L.Ed. 500; Wheeler v. United States, 226 U.S. 478, 483, 489, 33 S.Ct. 158, 57 L.Ed. 309; Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 306, 307, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786. See also, Newfield v. Ryan, 5 Cir., 91 F. 2d 700; Fleming v. Montgomery Ward & Co., 7 Cir., 114 F.2d 384; McMann v. Securities and Exchange Commission, 2 Cir., 87 F.2d 377, 379, 109 A.L.R. 1445.

[8] Emergency Price Control Act of January 30, 1942, § 202(g), 56 Stat. 30, 50 U.S.C.A.Appendix, § 922(g); United States v. White, 322 U.S. 694, 64 S.Ct. 1248; Hale v. Henkel, 201 U.S. 43, 26 S. Ct. 370, 50 L.Ed. 652; McAlister v. Henkel, 201 U.S. 90, 26 S.Ct. 385, 50 L.Ed. 671; Baltimore & Ohio R. Co. v. Interstate Commerce Commission, 221 U.S. 612, 622, 31 S.Ct. 621, 55 L.Ed. 878; Wheeler v. United States, 226 U.S. 478, 33 S.Ct. 158, 57 L.Ed. 309; Essgee Company of China v. United States, 262 U.S. 151, 158, 43 S.Ct. 514, 67 L.Ed. 917.