### UNITED STATES v. DAVIS.
#### No. 362.

Circuit Court of Appeals, Second Circuit.

Aug. 8, 1945.

Writ of Certiorari Granted Nov. 13, 1945.

Samuel Mezansky, of New York City, for appellant.

David Hartfield, Jr., of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

Davis appeals from a judgment of conviction upon an information for having unlawfully in his possession "168 gasoline ration documents"—coupons—which represented 504 gallons of gasoline. The only substantial point raised upon the appeal is whether the search was lawful which ended in the seizure of several sheets or "blocks" of gasoline coupons, and of some "bingo" sheets, the last, as we understand it, being officials forms on which used gasoline coupons have been pasted. The testimony upon which the validity of the search turns was heard by the judge, who at its conclusion declared that he believed the prosecution's witnesses. The upshot of their story was as follows. Davis maintained a "filling station" in the Borough of the Bronx, which the witnesses—two officers of the Office of Price Administration and a city detective—undertook to investigate. One of these drove a car to the pumps, and found a woman in attendance who filled his tank at his request without asking for coupons; after she had done so, she did ask him for them, and he answered that he had none. She replied that in that case she must ask a higher price for the gasoline, which he paid and then drove away. A second officer then drove another car to the pumps, and the same thing occurred. The officers then arrested the woman, who said that she had followed Davis' general orders in both instances. Davis himself appeared at the station shortly afterwards, and the officers arrested him also. He denied at the trial that he had been arrested, but, as we have said, the judge believed the officers, and we accept his finding. On the premises and near two of the usual gasoline pumps, was an office the entrance to which was by a door, locked at the time. To each of the pumps was attached a tin box holding gasoline coupons; a count of which showed that they did not cover the amount by which the storage capacity was diminished by sales. The officers faced Davis with this discrepancy and he answered that he had coupons enough to make it up. They then asked leave to go into the office which at first he refused. Later, one of them with a flashlight tried to look inside the office from outside; and when Davis saw this, he said to the officers that if they meant to go so far as that, they had better take the key and enter. He then directed his partner, to whom he had given the key after his arrest, to turn it

over to the officers. They entered and found the documents mentioned, which they seized and retained. The question is whether the search so made was unlawful. The judge found that Davis' consent was "voluntarily" given, and for that reason denied the motion to suppress the evidence. We need not decide that that finding is wrong, for we can dispose of the case upon other grounds; but we must own to some doubt whether a consent obtained under such circumstances should properly be regarded as "voluntary." Davis must have known, under arrest as he was, that the officers were not likely to stand very long upon ceremony, but in one way or another, would enter the office.

■ However, it appears to us that the search was "reasonable," regardless of Davis' consent. Section 633(a) (2) of Title 50 U.S.C.A. War Appendix, provides that, if during a national emergency the President decides that there is a shortage of material necessary for defense, he may allocate existing material as he thinks necessary. The Administrator of the Office of Price Administration—in the exercise of powers which the President delegated to him under this statute—promulgated General Ration Order, No. 8, effective April 15, 1943, § 2.6 of which forbids the possession of any "ration document" except by the person to whom it was issued, or by his agent, or unless the possessor gets it from another person "in accordance with a ration order." Section 633(a) (5) imposes a penalty for the violation of this regulation, and that is the crime charged here. The Administrator also promulgated Ration Order 5C, effective November 9, 1942, which indeed constitutes a kind of code for the rationing of gasoline. Section 1394.8104(a) of this provides that "all coupon books, coupons," shall "remain the property of the Office of Price Administration," which "may require the surrender and return" of them whenever it thinks that necessary in the public interest. Section 1394.8217(a) makes every dealer accountable for all coupons received by him, and enacts that the "aggregate gallonage value of * * * coupons and other evidences on hand and on deposit * * * shall at all times be equal to, but not in excess of the number of gallons of gasoline which would be required to fill the storage capacity * * * as shown by the current certificate of registration." That is to say, the documents received shall account for any shortage of gasoline in the tanks. Section 1394.8235(b) provides that "upon demand * * * every person shall produce for inspection" all his gasoline documents including coupons.

The argument of the prosecution is that since the coupons were the property of the Office and always open to its inspection, the officers were free to force an entrance into any building and seize whatever coupons they might find. For this they rely upon those decisions which hold that when a dealer continues to do business in general compliance with the regulations of the Office, he may be compelled by legal process to allow an inspection of all those papers which the regulations subject to inspection, and that he may not object that the inspection may disclose evidence relevant to a criminal prosecution against him. Cudmore v. Bowles, 79 U.S.App.D.C. 255, 145 F.2d 697; Bowles v. Rothman, 2 Cir., 145 F.2d 831; Bowles v. Beatrice Creamery Co., 10 Cir., 146 F.2d 774, 779; Bowles v. Glick Bros. Lumber Co., 9 Cir., 146 F.2d 566, 571; Bowles v. Insel, 3 Cir., 148 F.2d 91. In some of these decisions the dealer was a corporation, or at least the papers called for were corporate papers, which do not enjoy any constitutional privilege against crimination (Wilson v. United States, 221 U.S. 361, 382, 383, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558); and that was mentioned as one ground for the result. But there were others in which they were records of private business and the result was the same; moreover the rationale has always been that, when it has become necessary to regulate a business in the public interest, those who continue in it thereafter must be taken to have assented to the conditions imposed. The consequences of this theory are indeed far-reaching; it is becoming more and more usual to regulate businesses in cases of public emergency, a phrase which is confessedly exceedingly elastic. If any person already engaged in such a business must choose between abandoning his calling, or consenting to the surrender of his privilege against self-incrimination, when the regulations provide for inspection, the scope of the privilege is considerably circumscribed. Nevertheless, we do not wish to suggest any doubt that, so far as concerns inspection, the regulations are valid, or that Davis could not have been compelled by legal process to permit their inspection.

■ However, the officers did not demand their production by legal process; they took them without Davis' consent; and if the regulations subject any dealer in gasoline to a general search of his papers for the purpose of learning whether he has any subject to inspection and seizure, that is a far more serious invasion of his privileges than anything which has yet been decided. The point was considered in Bowles v. Beatrice Creamery Co., supra, 146 F.2d 774, 779, and although it was not decided, the court was pretty obviously inclined against such searches, as in particular appears from its quotation from the reasoning of the Chief Justice in Cudahy Packing Co. v. Holland, 315 U.S. 357, 364, 62 S.Ct. 651, 86 L.Ed. 895. We are very clear that to continue in a business after it has been regulated, as the dispensing of gasoline was regulated, does not expose a dealer to any general search; and that in so far as the prosecution in this case so asserts—as we understand it to do—it must fail. On the other hand there is of course no reason why such a dealer should be exempt from such searches as would in any event be "reasonable" in the ordinary constitutional sense; and we think that the search here before us was "reasonable," judged by that standard. The officers had just had personal ocular evidence that Davis was selling gasoline without demanding coupons; and that he was using this forbearance as an excuse for exacting a higher price. That presupposed (unless he was merely winding up his business, which he did not suggest) that somewhere he must have a quantity of coupons, corresponding to those which he had not taken from his customers, for otherwise he would have been unable to replenish his tanks. When challenged with this shortage he said that he did have the necessary coupons, but would not say where they were. Later, after the officers discovered the sheets and blocks now in question he declared that they had been given him by customers who had delivered them to acquire a gasoline credit, so to say. However, the two sales, just made, completely contradicted this excuse; it was apparent that, whether or not at times customers did deliver coupons to him in advance of their purchases, it was possible, and part of his ordinary practice to sell to any casual stranger who did not have coupons, provided he would pay a higher price.

■ The search was in no sense exploratory; the officers did not enter to see what they might find, or at least so far as they may have done so they got nothing. They knew that Davis must have contraband gasoline coupons in his possession; and although of course it was not certain that they were in the office, there was no other cache for them, which was anything like so probable. The coupons were not evidences of crime in the sense of being records of its commission: they were the direct "means of committing" it, and if the crime had been a felony, they could have been seized by search warrant wherever they were. § 612(2), Title 18 U.S.C.A. True, the crime was only a misdemeanor (§ 633(a) (5) of Title 50 U.S.C.A. War Appendix), and they could not have been seized even by warrant in premises removed from the place of arrest. But they were seized in premises closely adjacent; they were in a building which was a necessary part of the "filling station" where Davis was arrested; and if that building was within the undefined zone which may always be searched after the accused has been arrested, the search was lawful. In determining whether it was within that zone, it is vital to keep in mind the distinction which we have just made between records as such and the means of committing the crime, or its fruits; a wider search is more "reasonable" for the second than for the first. United States v. Kirschenblatt, 2 Cir., 16 F.2d 202, 51 A.L.R. 416. Indeed, for general support of this distinction it is scarcely necessary to do more than refer once more to the statute itself. § 612, Title 18 U.S.C.A. It must be owned that the borders of this zone are most impalpable; and at least while the Eighteenth Amendment was in force, the ruling decisions were not entirely harmonious. Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231; Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L. Ed. 374; United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775. We recently had occasion to consider the question in United States v. Lindenfeld, 2 Cir., 142 F.2d 829, 832, where after a consideration of all the authorities we concluded that, when a search incident to an arrest is for instruments or fruits of crime, it may extend over "that part of the premises over which the offender's control and unlawful activities likely extended"; or, as we quoted from Marron v. United States, supra, 275 U.S. 192, 199, 48 S.Ct. 77, 72 L.Ed. 231, it may extend to objects within his "immediate possession

144

and control." This test, at least the second expression of it, is certainly right, and in the case at bar the facts fitted it. Davis was on the spot; the key to the office was in the hands of his partner; the office itself was part of the premises which made up the filling station; the fact that the greater part of a filling station must be unenclosed is irrelevant to any interest involved. Had the coupons been in a room adjacent to another in which Davis was arrested, it would have been lawful, upon finding the key in his pocket to enter that room and seize the coupons if one knew that they were there and did not enter only to explore. We can see no significance in the fact that the office was the only enclosed part of the station, or that Davis had given the key to his partner after his arrest.

■ The seizure of the coupons being lawful, nothing remains of the appeal. It is scarcely necessary to answer the argument that the evidence proving the sales to the two officers was irrelevant to the charge of unlawfully possessing the coupons. Rather, it was the effective answer to Davis' excuse that he had the necessary number of coupons in his possession. It is scarcely necessary to repeat that it is never an objection to the admission of evidence relevant to the proof of one crime that it is also evidence of another. The guilt was proved beyond the slightest peradventure, and it would be a defeat of justice to reverse the conviction.

Conviction affirmed.

FRANK, Circuit Judge (concurring).

I add a few words only because I think it important to underscore our rejection of the following argument on which the Assistant United States Attorney chiefly re-

lied: Whenever the government validly regulates any business and includes in its regulation a valid requirement that records be kept which shall be open to official inspection, then refusal to produce the records for such inspection authorizes the officers to enter the premises and seize the records. One variant of the argument was that refusal to permit inspection in such circumstances constitutes, in effect, the legal equivalent of consent to enter; another variant was that, in such circumstances, conduct of the defendant must be interpreted as consent to entry although, in other circumstances, the very same conduct would be regarded as refusal. In one way or another, the Assistant United States Attorney urged that obstruction of the right of the officers to inspect deprived the defendant of his usual privilege to be free of unreasonable search and seizure.

Even of those who regard with disfavor the constitutional privilege against self-incrimination,[1] there are few who do not agree that freedom from unreasonable search is one of the basic, indispensable, privileges of our democratic system of government. Were the Assistant United States Attorney's contention correct, then that privilege would vanish in large segments of American life. For it is fairly obvious that in the future many businesses will be subject to governmental inspection under constitutionally valid statutes. The complications of our modern industrial era make such inspection often socially desirable, despite its irksomeness. To augment such irksomeness by coupling it, as the Assistant United States Attorney would like, with the loss of a fundamental constitutional right would be to build up popular resistance to needed governmental action. Fortunately, his argument is wholly unsupported in authority or reason.

---

[1] I do not happen to share that view.