**UNITED STATES v. SCHILLER et al**

No. 133, Docket 21861.

United States Court of Appeals
Second Circuit.

Argued Dec. 11, 1950.

Decided March 6, 1951.

Graubard & Moskovitz, for defendant-appellant Schiller; Boris Kostelanetz, of counsel.

Patterson, Belknap & Webb, New York City, for defendants-appellants Julius Hoffman and First Terrace Gardens, Inc.; Robert P. Patterson and Ambrose L. Cram, Jr., New York City, of counsel.

Irving H. Saypol, U. S. Atty., New York City, for plaintiff-appellee; Harold J. Raby, New York City, of counsel.

Before AUGUSTUS N. HAND, CLARK and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The indictment was in one count and charged that Schiller, Hoffman and First Terrace Gardens, Inc., a New York corporation of which Hoffman was the President, conspired to defraud the United States, in the exercise of its governmental function of administering the Emergency Rent Control Program justly and free from corruption and improper influence, (1) by submitting to the Housing Expediter false petitions as to the amounts of management expenses and fees incurred by First Terrace Gardens; (2) by having Hoffman and First Terrace Gardens pay to Schiller $2,000 with intent to influence his action in connection with the petitions and to induce him to secure approval of requested rent increases, (3) by having Schiller accept the $2,000 and obtain approval of the requested rent increases, though Schiller would know that Hoffman and First Terrace Gardens would not be entitled to them.

The question as to the payments concededly made by Hoffman to Schiller was whether those payments (were they loans or gifts) were made to influence the official conduct of Schiller, who was Area Rent Control Attorney. There plainly was enough evidence in support of the indictment to go to the jury, who found all three defendants guilty. The defendants all rely on the following errors: (1) in the judge's charge; (2) in the cross-examination of Schiller. Schiller in addition claims error, (3) because of a refusal of the trial court to order the return and suppression of his diary entries which were received in evi-

dence, (4) because of a denial to him of a pre-trial inspection of the diary.

After a charge by Judge Coxe, to which no objection was made, the jury returned to the courtroom and asked the court for a definition of "conspiracy." The judge reread the portion of his original charge embodying a definition of conspiracy which he had there given. Then, following an instruction requested by the defendants concerning the jury's duty to acquit if not satisfied beyond a reasonable doubt, he gave the following additional instructions:

"The Court: * * * a conspiracy, such as this conspiracy, is shown by piecing together the facts and the evidence, if it is found there was—and you have all the evidence on that point—a common understanding, a concert of action as to the things to be done. That can be pieced together by inferences from the facts as to whether there was that. And here you have heard the evidence, particularly as to the passing of this money at these particular times, and that together with all of the other facts in the case and all the testimony is something which should be considered by the jury for the purpose of determining whether there was such a conspiracy."

■ Appellant's counsel argue that the foregoing supplemental instruction was in effect a statement by the trial judge of his opinion that Hoffman and Schiller were guilty of the conspiracy charged and that the jury had all the necessary evidence of that conspiracy. The supplemental instructions which we have quoted did not bear such an interpretation. The judge nowhere said that in his opinion the alleged conspiracy had been established. At most he only omitted the word "alleged" which would have been regarded by any rational jury as implied. His supplemental statement is to be read in connection with his original charge, in which he told the jury that they were "the sole judges of the facts and of the inferences derived from the facts and of the credibility of the witnesses." Moreover, appellants' counsel never made it clear to the judge that they were raising any such linguistic objection to his statements as they now attempt.

The appellants next object to the cross-examination of Schiller who when on the stand in his own behalf and after an objection which was overruled, admitted that in or about March 1948 he had been paid $500 by a prospective tenant, in return for which he was to procure, and did procure, an apartment for her. He also admitted another payment of $500 by another prospective tenant, for a similar service, in March 1949. These questions had been preceded by a question as to whether the acts enumerated above were in violation of the New York Penal Law, Section 965, which was excluded by the judge. It appears that Schiller had previously pleaded guilty to such a violation of the New York Penal Law, but that no judgment had been entered against him on this plea.

■ It is claimed that the previous question brought before the jury Schiller's plea of guilty, which was not a proper subject of attack when no judgment had been entered thereon. We think this argument confuses proof of conviction of crime to contradict a witness who has denied it with a general cross-examination of a witness on matters affecting his credibility. Although the government would have been bound by a response dealing only with credibility unless it had a court record of conviction to offer, the cross-examination was permissible because it dealt with disreputable or criminal acts tending to impugn Schiller's veracity. Even if we should assume that a defendant should be treated with more leniency than an ordinary witness in attacking collaterally his veracity by proof of prior crimes, [see III Wigmore on Evidence (3rd Ed.) §§ 891(2), 983(4)], the acts which Schiller here confessed were properly proved to show that his motive in accepting loans from his co-defendants was not innocent. His testimony that he had received commissions from prospective tenants for services which were in violation of a New York penal law prohibiting excessive charges in connection with rental agreements tended to show that he had an intention to use his office in disregard of the rental control regulations in situations like the case at bar. As Professor Wigmore says: "It is not here necessary

to look for a general scheme or to discover a united system in all the acts, the attempt is merely to discover the intent accompanying the act in question; and the prior doing of other similar acts, whether clearly a part of a scheme or not, is useful as reducing the possibility that the act in question was done with innocent intent." II Wigmore on Evidence (3rd Ed.) § 302.

Schiller makes the further personal objection that there was an unlawful search and seizure of two diaries which he kept. These diaries, while published by the Real Estate Board of New York and containing some purely personal matters, were also concerned with matters relating to his work as attorney for the Area Rent Office of the Housing Expediter. On their face they appear to have been used to record engagements with persons meeting Schiller at his office for official business and to record Schiller's other business appointments and meetings. They were left by Schiller in a desk in the Area Rent Office when he, being then under investigation, took a leave of absence which ended with his resignation. Schiller claimed that he did not remove the diaries because at the time he left his arms were loaded with other personal property, and government investigators had told him he could return for the rest of his property.

■ Prior to the trial a motion was made before Judge Coxe by Schiller under Federal Rule of Criminal Procedure 41(e), 18 U.S.C.A. to suppress the diaries as evidence. The judge denied that motion as premature, because the government stated that it might never desire to offer evidence from the diaries. During the trial, however, entries containing the initials "J. H." and also the name "J. Horowitz" were admitted after proof that two of the latter entries, noting engagements at lunch-time or for lunch, were on days when Schiller admittedly received the checks from Hoffman at lunch. The government argued that these entries concealed *sub rosa* meetings between Schiller and Hoffman. Schiller objected to the admission of these entries on the ground that they were irrelevant because there was no proof that Horowitz was the same person as Hoffman. This objection was overruled, and properly so. In our opinion there was enough to go to the jury on the question of identity of the two persons, for Schiller neither produced Horowitz, nor remembered who he was.

■ We do not think Schiller was entitled to have the diaries suppressed as the fruit of an unlawful seizure. He never renewed the motion for suppression of the diaries which Judge Coxe had only denied as premature, though he could and should have done this after Judge Coxe's ruling on his original motion.[1] Irrespective of this procedural defect, the entries were kept in diaries used to record Schiller's governmental engagements. We think the diaries as a whole were government property and in any event there was a sufficient showing that the entries introduced in evidence dealt with official duties. Such matters as rent adjustments and recommendations regarding the same were within his general duties, whether he performed them rightly or wrongly, at lunch or elsewhere. Under those circumstances, we think the government was not acting unreasonably in retaining the diaries for the trial and introducing selected entries. Compare United States v. Davis, 2 Cir., 151 F.2d 140, affirmed on other grounds, 328 U.S. 582, 66 S. Ct. 1256, 90 L.Ed. 1453.

■ Schiller further argues that he was entitled under Federal Rule of Criminal Procedure 16, 18 U.S.C.A., to be permitted to inspect before trial all the contents of the diaries. He was granted pre-trial discovery by Judge Goddard of only the portion of each diary containing what the court deemed to be his personal entries. The rule providing for pre-trial inspection is in terms discretionary and not mandatory. Moreover, he was allowed inspection of the diaries as a whole at the trial by Judge Coxe, so far as he wished to ex-

1. "* * * The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing." Fed.Rule of Crim.Proc. 41 (e).

amine them. We cannot see that he suffered any detriment by not being given access to them earlier.

For the foregoing reasons the judgments are affirmed.

FRANK, Circuit Judge (concurring).

I am somewhat troubled because, although the judge sustained an objection to the question, "Now, Mr. Schiller, isn't it a fact that on or about March 3, 1948 you received from Mrs. Estelle G. Anderson the sum of $500 in currency in return for which you agreed to procure and did procure an apartment in Manhattan for her in violation of Section 965 of the Penal Law of the State of New York making it a crime to do that?," the subsequent questions which the judge permitted to be answered as to accepting money, etc., in the light of the former question, plainly suggested to the jury that the defendant had committed other crimes when he had not in fact been convicted. Nevertheless I think we may properly avoid reversing since the answer showed that the defendant's motive or intention was not innocent when he accepted money from his codefendants. 2 Wigmore (1940 ed.) §§ 302, 343. The issue of the defendant's intention was plainly relevant since his defense in part rested on his contention that the money had been offered to him and taken by him as a loan.

My colleagues, however, have based their affirmance on the additional ground that the question was proper by way of impeachment of defendant, as a witness. To that extent, I am not prepared to concur. True, it is commonly said that an accused who takes the stand may be impeached, like any other witness, by eliciting testimony from him on cross-examination as to his prior acts of misconduct, 3 Wigmore, §§ 889–890. Wigmore, however, qualifies this broad statement in two respects: (1) Where (as here) the accused has not raised the issue of his general good moral character, then by taking the stand he places in issue his credibility only, and the prosecution, by way of impeachment, may attack his character for veracity only. See 3 Wigmore, §§ 891(1), 925. (2) Cross-examination as to his past acts of misconduct may prejudice the defendant *qua* accused in the eyes of the jury to an extent which far outweighs any value it may have as evidence on the issue of his credibility as a witness. For that reason, Wigmore suggests that such impeachment should be limited more strictly in favor of the accused than in the case of the ordinary witness. See 3 Wigmore, §§ 983(4), 987. Cf. 8 Wigmore, § 2277(4); Gideon v. United States, 8 Cir., 52 F.2d 427, 429–430; Ellis v. District of Columbia, 45 App.D.C. 384, 388.

Since, under Federal Rules Criminal Procedure Rule 26, 18 U.S.C.A. we are not obliged to follow state decisions on matters of evidence unless we believe that they correctly reflect "the principles of the common law * * * in the light of reason and experience," I think we should adopt Wigmore's suggestion. While the permissible scope of such questioning is largely within the discretion of the trial judge, I do not believe that the prosecution, on the sole pretext of attacking credibility, may fairly use an objectionable question to suggest the past acts of the accused were criminal when he has not been convicted for those past acts. Instructions by the trial judge to disregard the offending question and to consider past misconduct solely on the issue of the accused's credibility as a witness are as likely to enhance as to diminish the jury's general impression that the defendant is a poor sort who should be convicted for other acts if not for the crime charged. Cf. United States v. Grayson, 2 Cir., 166 F.2d 863, 870–871, concurring opinion, and cases cited therein at page 871, note 4; United States v. Antonelli Fireworks Co., 2 Cir., 155 F.2d 631, 655–656, dissenting opinion.