60726. JACOBS v. STATE OF GEORGIA.

McMURRAY, Presiding Judge.

On January 16, 1980, in connection with an investigation with reference to the affairs of International Life Services of Georgia, Inc., the Commissioner of Securities of the State of Georgia (Secretary of State) issued a subpoena duces tecum to Roland L. Jacobs, calling for the production of certain individual and corporate records. Jacobs failed to respond. Whereupon the Commissioner, by and through his counsel, pursuant to authority contained in Code Ann. § 97-111 (c) (Ga. L. 1973, pp. 1202, 1246; 1974, pp. 284, 311; 1975, pp. 928, 956), made application to the Superior Court of Fulton County for subpoena enforcement and adjudication of contempt of court. It is contended that Jacobs is the president and resident agent of the corporation under investigation to determine whether the corporation or anyone acting under its direction or control had violated or was about to violate any provision of the Georgia Securities Act of 1973, as amended (Code Ann. § 97-102, et seq.; Ga. L. 1973, pp. 1201, et seq.).

When the investigative hearing was convened, compliance with the subpoena duces tecum was called for, and Jacobs failed to produce any of the subpoenaed corporate records. The Commissioner contends that the subpoena duces tecum was issued lawfully pursuant to the Commissioner's authority contained in Code Ann. § 97-111, supra; that both Jacobs and the corporation failed to comply with the subpoena duces tecum for no legally cognizable reason and that they are in contempt for their failure to produce the subpoenaed corporate records. Attached to the application for subpoena enforcement was the subpoena duces tecum and other evidence.

A rule nisi issued and a hearing was held before the court on March 7, 1980, with reference to the Commissioner's application. Jacobs was the only witness to testify, being called for cross

examination. He admitted only that he was president of the corporation. When asked if he were the sole director, sole stockholder and registered agent for the corporation, he "invoked his Fifth Amendment privilege against self-incrimination" as to these questions. When asked to identify his signature on the certified copy of the articles of incorporation and the certified copy of the only annual report filed, he "again invoked his Fifth Amendment privilege against self-incrimination." The certified documents were then admitted into evidence. As to each and every question asked with reference to the corporation, and Jacobs' role in the activities of the corporation other than as answered above, he again "invoked his Fifth Amendment privilege against self-incrimination." The Commissioner, through counsel, then argued that Jacobs having been shown to be principal officer, sole director, sole stockholder and registered agent of the corporation, he was the custodian of all corporate records of the corporation and bound to comply with the subpoena duces tecum. Hence, his failure to do so should subject him to punishment for contempt.

The court then determined that the above facts constituted the "record of the proceedings before me," that is, "Jacobs is the President, registered agent, sole director, and sole stockholder in International Life Services of Georgia, Inc. . . . [and] . . . did not produce any of the subpoenaed corporate records . . . [and] . . . was the only person who could be deemed a custodian of the corporate records," and was properly subpoenaed by the Commissioner; the Commissioner's investigation was lawfully begun, the subpoena duces tecum was lawfully issued and served, and Jacobs' contention that he does not have custody of any corporate records of the corporation "is simply not credible and is not worthy of belief." The court then concluded that Jacobs "may not invoke his Fifth Amendment privilege against self-incrimination with respect to corporate records, and his failure to produce corporate records subpoenaed by the Commissioner is punishable as contempt." The court cited Andresen v. Maryland, 427 U. S. 463 (96 SC 2737, 49 LE2d 627); Bellis v. United States, 417 U. S. 85 (94 SC 2179, 40 LE2d 678); Curcio v. United States, 354 U. S. 118 (77 SC 1145, 1 LE2d 1225) (1957).

A supplemental record has been filed in this court containing the certified copies of the articles of incorporation and the only annual report filed by International Life Services of Georgia, Inc., tendered into evidence at the contempt hearing.

Jacobs was adjudged in contempt for his wilful failure to produce the corporate records and ordered incarcerated for a period of 10 days providing he might purge himself of this contempt by

submitting the subpoenaed records to the Commissioner of Securities. The contemnor appeals, there being no transcript, and the above facts have been determined by recollection by the trial court. *Held:*

1. Generally, corporate books and records cannot be insulated from reasonable demands by governmental authorities by a claim of personal privilege. Same only applies to the private property of the person claiming the privilege. United States v. White, 322 U. S. 694, 698-699 (64 SC 1248, 88 LE 1542). A corporate officer may not withhold testimony or documents on the ground that the corporation would be incriminated. Hale v. Henkel, 201 U. S. 43 (26 SC 370, 50 LE 652). Nor may the custodian of corporate books or records withhold them on the ground that he personally might be incriminated by their production. Wilson v. United States, 221 U. S. 361, 384-386 (31 SC 538, 55 LE 771); Essgee Company of China v. United States, 262 U. S. 151, 158 (43 SC 514, 67 LE 917); Wheeler v. United States, 226 U. S. 478 (33 SC 158, 57 LE 309); Fisher v. United States, 425 U. S. 391, 413 (96 SC 1569, 48 LE2d 39); and cases cited. *The custodian of corporate records must produce the records if he has them and he may also be required to identify them; but he may not be required to do more in answering questions as to their whereabouts such as to disclose the whereabouts of the records or who has possession of them.* Curcio v. United States, 354 U. S. 118, 125, supra.

In Curcio v. United States, 354 U. S. 118, 128, supra, the Supreme Court said that "forcing the custodian to testify orally as to the whereabouts of nonproduced records requires him to disclose the contents of his own mind. He might be compelled to convict himself out of his own mouth. This is contrary to the spirit and letter of the Fifth Amendment." But the custodian of corporate or association books, by accepting his custodianship, voluntarily assumes a duty which overrides his claim of privilege with respect to the production of the records themselves, but does not waive his constitutional privilege as to oral testimony. Therefore, a corporate officer who is the custodian of the records may not resist the production of corporate books in response to subpoena even though such books may tend to incriminate him as an individual.

2. Under the Georgia Securities Act of 1973, as amended (see Code Ann. § 97-111 (d), supra), where an individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination, *the Commissioner may, with the approval of the Attorney General, issue a written order to any individual requiring such individual to testify* and "the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination," but he is granted immunity in which case

his testimony, if his privilege against self-incrimination could be validly asserted, may not "be used against the witness in any criminal case, except a prosecution for perjury, false swearing. . ." However, the recollected transcript and record before us fails to reflect any such order was issued in this case, and we are not concerned with this statute, nor are we concerned with the effect of Code § 38-1102 or § 38-1205, as amended (Ga. L. 1978, p. 2000), or Code Ann. § 38-711 (Ga. L. 1952, p. 177), since the witness did not attempt to avail himself of these protective statutes (§§ 38-1102, 38-1205, supra) in this instance.

3. Apparently from the limited record before this court prepared from recollection by the trial court, the contemnor did contend he was not in possession of the records, and the court simply did not believe him. However, the recollected transcript shows that Jacobs only admitted that he was president of said corporation. He invoked his Fifth Amendment privilege against self-incrimination when he was asked whether he was the sole director, sole stockholder, and registered agent of the corporation. Thereafter, Jacobs again invoked his Fifth Amendment privilege against self-incrimination when requested to answer with reference to the date of incorporation, income and expenditures of the corporation during the year 1979, the solicitation of investments from the public in 1979, the maintenance of 10 separate bank accounts on which he was a signatory, the operation of over $800,000 worth of business in 1979, the operation of said business out of Jacobs' home, the maintenance of corporate records and if they were kept at Jacobs' residence. The recollected evidence simply shows Jacobs as the president of the corporation and does not disclose that he was "the only person who could be deemed a custodian of the records." Further, the documentary evidence does not show Jacobs to be the sole director or person who might be the custodian of the records. The "Certified Statement for Annual Report of a Corporation," filed on February 16, 1979, reflects in addition to Roland L. Jacobs as President that "Laurence H. Hamblen" was, at the time of filing of the certificate, a "Principal Officer" with the "Title Sec." The corporation was incorporated on December 8, 1978, and in the articles of incorporation "Laurence H. Hamblen, 1201 Peachtree Street, N.E., 400 Colony Square, No. 1101, Atlanta, Georgia 30361" was listed as "the Incorporator" and along with Jacobs was listed as being the sole members of the initial board of directors. These articles of incorporation were signed "Laurence H. Hamblen" apparently as "the Incorporator." No other signature appears on these "articles."

The articles of incorporation show "Hamblen" to be the initial registered agent as of December 8, 1978, and that he consented to

serve as such on December 9, 1978. However, the "Certified Statement for Annual Report of a Corporation" filed on February 16, 1979, listed "Roland Jacobs" as the "Registered Agent in Ga."

The trial court was without authority to force an answer as to where the records were located. But if it be determined that the records are in his possession he might be subjecting himself to being held in contempt for failing to produce them. In Bellis v. United States, 417 U. S. 85, 86, supra, it was determined that certain partnership records were in Bellis' possession, and it was held he could not refuse to produce them and he was held in civil contempt for refusing to produce the records; and the judgment was affirmed. From the limited recollection of the hearing before the trial court, even though it appears that a number of questions were asked to which the contemnor had a right to invoke his Fifth Amendment privilege against self-incrimination we are unable to ascertain whether or not the records were in the possession of the contemnor or that he is the custodian of these records. Nevertheless, the trial court ruled that Jacobs was the president, registered agent, the sole director, and the sole stockholder of the corporation under investigation and that Jacobs' contention "that he does not have custody of any corporate records . . . is simply not credible and is not worthy of belief."[1]

The recollected transcript and proceedings fail to disclose that Jacobs was the sole director, sole stockholder, and registered agent of the corporation so as to establish that he was "the only person who could be deemed a custodian of the corporate records of International Life Services of Georgia, Inc."

4. The adjudication of contempt could very possibly have been supported by other evidence that Jacobs was the custodian and possessor of the corporate records through other means than through Jacobs' own testimony, as Jacobs invoked his Fifth Amendment privilege against self-incrimination. The Commissioner apparently did not seek to establish that he was the custodian by other means as Jacobs was the only witness called. Our result would undoubtedly be different had the recollected transcript and the record disclosed that it was proven by the Commissioner, by other means, or through

---

[1] The record here contains "an unofficial transcription of the tape cassettes of the testimony given by Roland L. Jacobs" at an investigative hearing conducted by a representative of the Commissioner on February 14, 1980. This transcription reflects that in response to a question propounded to Jacobs as to "[w]ho is the secretary/treasurer of the corporation" Jacobs answered "Larry Hamblin [sic]." However, the facts found in the "Relator's memorandum" (state's attorney) were determined to "constitute the record of the proceedings."

Jacobs himself had he not invoked his Fifth Amendment privilege, that Jacobs was the custodian and possessor of the corporate records. It was only established that Jacobs refused to comply with the subpoena duces tecum, and such refusal was the sole ground for the adjudication of contempt.

Since it has been held in Curcio v. United States, 354 U. S. 118, 125, supra, that the contemnor may not be forced to disclose the whereabouts of the records and who has possession of them if he claims a personal privilege of refusing to answer on the ground that to do so would tend to incriminate him, he could not be forced to answer and be held in contempt for refusing to answer. We hold simply that under the evidence in the recollected transcript and record before us Jacobs cannot be held in contempt, based on his invocation of his Fifth Amendment privilege in refusing to answer certain questions propounded to him by the adverse party. Accordingly, the adjudication of contempt is not supported by the evidence in this instance.

*Judgment reversed. Banke and Pope, JJ., concur.*

DECIDED JANUARY 14, 1981 —
REHEARING DENIED FEBRUARY 11, 1981 — 

*Herbert Shafer,* for appellant.

*Arthur K. Bolton, Attorney General, Robert S. Stubbs II, Executive Assistant Attorney General, Don A. Langham, First Assistant Attorney General, John C. Walden, Senior Assistant Attorney General, Michael Johnson, Assistant Attorney General,* for appellee.