BOWLES, Adm'r, Office of Price Administration, v. BEATRICE CREAMERY CO.

SAME v. VOERDING.

Civil Actions Nos. 2904, 2906.

District Court, D. Wyoming.

July 24, 1944.

Max D. Melville, Regional Litigation Atty., of Denver, Colo., and James W. Brown, Dist. Enforcement Atty., of Cheyenne, Wyo. (Fleming James, Jr., Director Litigation Division, Samuel Mermin, Chief Briefing Branch, and Harold Craske, Atty., all of Washington, D. C., on the brief), for plaintiff.

Albert D. Walton, of Cheyenne, Wyo., for defendant Beatrice Creamery Co.

L. E. Armstrong, of Rawlins, Wyo., and Ellery, McClintock & Gray, of Cheyenne, Wyo., for defendant N. F. Voerding.

KENNEDY, District Judge.

These are suits on behalf of the Administrator of the Office of Price Administration to collect triple damages of the defendants growing out of alleged violations of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, §§ 901–946. In each case there is an attack by defendants, through motions, to suppress the evidence alleged to have been illegally secured by plaintiff and inasmuch as the legal propositions involved seem to be nearly identical, the cases were consolidated for the purpose of hearing upon the motions. In addition to oral argument, counsel have submitted trial briefs.

■■ The defendants in each case were engaged in the ordinary course of business in dealing in ice cream, frozen poultry and the like. The defendant in case number 2904 is a corporation and the defendant in case number 2906 is an individual operating under a trade name. The Constitutional rights of a corporation and an individual are different under the Fourth and Fifth Amendments but, insofar as those rights are sought to be protected here, the cases may well be considered together. The motions to suppress grow out of the acts of the representatives of the Administrator in going to the places of business of the defendants and demanding the right and opportunity to inspect the books and records of the defendants. The position of the defendants is that this was in contravention of their Constitutional rights under the Fourth and Fifth Amendments in that the inspection was without the consent of the defendants, while the position of the plaintiff is that the examination was consented to by the defendants but in any event it is permissible under the Emergency Price Control Act in that the records so kept by the defendants were of a quasi-public nature and thereby open for such government inspection. The cases first seemed to turn on the proposition that this being a civil case, the Constitutional rights of the defendants were not involved but after the oral argument and upon the filing of trial briefs the plaintiff seems to have abandoned this position. However, I think the suggestion of the defendants that the proceeding being for the collection of a penalty rather than that of a remedial nature is sound and must be adopted. Here the recovery sought is not by the party aggrieved in the nature of compensation but is by the government to recover in the nature of a penalty as punishment for violation of the Act. 1 C.J.S., Actions, § 59, p. 1180; State of Wisconsin v. Pelican Ins. Co. 127 U.S. 265, 8 S.Ct. 1370, 32 L.Ed. 239; United States v. Joles, D. C. Mass., 251 F. 417; State of Iowa v. Chicago, B. & Q. R. Co., C. C., 37 F. 497, 3 L.R.A. 554; Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123. The suits while on the civil side of the docket are criminal in their nature so as to permit the defendants to invoke their Constitutional rights. It is therefore necessary to consider whether, under the circumstances, assuming that the examination of the books and accounts of the defendants were without consent, their Constitutional rights have been invaded. The Emergency Price Control Act, through Section 922, 50 U.S.C.A. Appendix, permits the Administrator by regulation or order to require any person engaged in the business of dealing with any commodity to furnish information under oath or affirmation at any time and keep records and other documents and to make a report and he may require such person to permit the inspection and copying of records and other documents and may subpoena such persons to appear and testify and produce documents at any designated place. Under Section 925, the Administrator is permitted to bring a suit for triple damages and the Act also provides for the

criminal prosecution of those disobeying those provisions or the regulations thereunder. As has been stated, the plaintiff contends that under the provisions of the Act, the representatives had the right to go to the places of business of the defendants and demand an inspection of their books, documents and records. A broad reading of the Act would seem to justify this construction but it still remains to be determined whether or not such inspection is within the limitation of the Constitution. The Fourth Amendment provides protection against unreasonable search and seizure and the Fifth Amendment protects against a person being compelled to give evidence against himself. It has been repeatedly held by the Supreme Court that the Fifth Amendment does not apply to corporations and only to individuals but that the Fourth Amendment is applicable to corporations as well as individuals. A clear statement, well supported by authority, is found in Fleming v. Montgomery Ward & Co., 7 Cir., 114 F.2d 384, at page 386:

"Respondent is a corporation and as such is not protected by immunity against self-incrimination which is guaranteed by the Fifth Amendment. Hence, the forced production of the records cannot be said to be unreasonable because it might deprive respondent of the benefit of immunity against self-incrimination. A corporation is entitled, however, to the protection of the Fourth Amendment against unreasonable searches and seizures of its papers."

From a cursory examination of the authorities submitted it would seem that the Courts are not entirely harmonious concerning the question here involved. The Supreme Court has considered the question a number of times but in the majority of these cases the rights of the parties have been viewed where a subpoena or subpoena duces tecum has been invoked. In the case at bar, although the Administrator is apparently given power to issue a subpoena, he has not elected to do so but has demanded an inspection of the books and records of the defendants for the purpose of ascertaining whether or not the law has been violated. We are not therefore, here called upon to determine what the rights of the plaintiff might be in the event a subpoena had been issued to the defendants requiring them to produce before the Administrator certain designated records called for in the subpoena, or to require the defendants to appear before him to testify in that respect.

We are here limited to a discussion of the right of the Administrator to secure information by inspection and the legal point involved will be considered upon this narrow basis. As has been stated, the Courts are not in harmony in all respects but there would seem to be certain land-marks laid down by the Supreme Court which throw light upon the point. The case of Federal Trade Commission v. American Tobacco Co. 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786, would seem to be a fair example of the views of the Supreme Court upon a kindred question. In that case the matter appeared on a petition for writs of mandamus to require the production of records, contracts, memoranda and correspondence for inspection. Without quoting from the opinion itself, it would seem that the expression contained in the second, third and fourth clauses of the syllabus would be sufficient:

"2. The mere facts of carrying on commerce not confined within state lines and of being organized as a corporation do not make men's affairs public. Id.

"3. A governmental fishing expedition into the papers of a private corporation, on the possibility that they may disclose evidence of crime, is so contrary to first principles of justice, if not defiant of the Fourth Amendment, that an intention to grant the power to a subordinate agency will not be attributed to Congress unless expressed in most explicit language. P. 306.

"4. The above act, (§ 9), provides that the commission shall at all reasonable times have access to, for the purpose of examination, and the right to copy, any documentary evidence of any corporation being investigated or proceeded against, and that, to enforce compliance, writs of mandamus may issue upon application of the Attorney General. Held, that access is confined to such documents as are relevant as evidence to the inquiry or complaint before the commission, and that their disclosure cannot be compelled without some evidence of their relevancy and upon a reasonable demand. Id."

The point to be accentuated would be that the rights of the government go only to such documents as are relevant to the matter under investigation and that disclosure thereof cannot be compelled without some showing of the relevancy. It is significant here in that the same sort of disclo-

sure was authorized by Congress on behalf of the Federal Trade Commission as is authorized by the Act in connection with the enforcement of the Emergency Price Control Act. If the American Tobacco Co. case correctly expounded the law in regard to the limitations which surround investigations by Federal Authorities, how much greater is the offense as in the case at bar, that those authorities should go to defendants and demand the right to indiscriminately examine all their books, accounts and private business papers without any showing whatever as to their relevancy? By this decision no attempt may be inferred to limit the rights of the Administrator through the power of subpoena to secure testimony or the production of certain specified documents on proper showing being made as to their existence, but to sustain the act of the Administrator in these cases would mean that the affairs of any business concern at any time, without showing, would be, in the language of Mr. Justice Holmes entitled "to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime."

 Numerous cases are cited in that opinion which sustain the views of the Court as announced, and this Memorandum will not be prolonged by repeating them. That the Constitutional rights of the people are not restricted by War Emergencies, out of which the Price Control Act originated, is definitely announced in Ex parte Milligan, 4 Wall. 2, 18 L.Ed. 281. The conclusion therefore is that unless the inspection in this case was entirely voluntary on the part of the defendants, their Constitutional rights have been invaded and that their proper redress would be through the suppression of the evidence gained by the Administrator through such inspections.

 Without setting out in detail the evidence presented to the Court as to what occurred at the time the inspectors visited the business places of the defendants with the demand that they might be permitted to inspect the books, records and documents, it may be briefly said that the inspectors presented themselves at the respective places of business, revealed their identity and their designated authority as agents under the Price Control Authority and asserted that they had the power under the Act to demand and receive the right to make such inspection. While the evidence may vary to some extent, this seems to be the statement of what took place at the time. The testimony likewise varies somewhat as to what the attitude of the defendants was but evidently both consented, at least to the extent that they offered no physical force in objecting to the demand of the inspector. As it now appears, the representation of the agents that they had authority under the Act to inspect, in a general way, all the books and records of the defendants, was erroneous as a legal proposition because, if we are correct in our conclusions, they had no such right and defendants' submission to the demand of the inspectors was in the nature of a peaceful submission to officers of the law and was not a consent amounting to a waiver of their Constitutional rights. United States v. Slusser, D.C.Ohio, 270 F. 818; United States v. Marra, D.C.N.Y., 40 F.2d 271; United States v. Rembert, D.C., 284 F. 996; United States v. Ruffner, D.C.Md., 51 F.2d 579; In re Lobosco, D.C., 11 F.2d 892.

 For the reasons stated, all evidence secured by the Agents of the plaintiff through their illegal demand for inspection without Constitutional authority, together with all evidence which was subsequently secured by them through the revelations of such illegal inspections and examinations of the books, accounts and records of the defendants will be suppressed in the cases pending and an appropriate order may be submitted to this effect, in collaboration with counsel for plaintiff, on or before July 31, 1944, exceptions being reserved and allowed to plaintiff.