**UNITED STATES v. KEMPE.**

Criminal No. 4005.

District Court, N. D. Iowa, W. D.

Feb. 13, 1945.

T. E. Diamond, U. S. Dist. Atty., of Sioux City, Iowa, for the Government.

Carlos W. Goltz, of Sioux City, Iowa, for defendant.

GRAVEN, District Judge.

Motion to suppress evidence. In this case an information was filed against the defendant with approval of Court on December 8th 1944. The information is in seven counts. In four counts the defendant as a retail dealer in gasoline is charged with selling considerable quantities of gasoline without receiving ration coupons therefor. In three counts the defendant is charged with sales of gasoline in violation of maximum price limitations. It appears that the defendant is a retail dealer in gasoline, distributing in a tank truck. The defendant kept the sales slips showing his sales at his home; apparently he had no other place for the transaction of his business or the keeping of his records. On April 24, 1944, a representative of the Office of Price Administration called at the defendant's home and claimed the right to inspect the sales records of the defendant as to gasoline sales. The defendant himself was not at home, but his wife was. The representative proceeded to check the sales slips but found himself in need of an adding machine to make computations. He asked permission of the defendant's wife to take the sales slips with him for checking purposes. The defendant's wife agreed that he could take the sales slips with him for checking purposes providing they were returned. The investigator then executed the following receipt:

"April 25th 1944

"Received from Mrs. J. W. Kempe, sales slips from December 1, 1942, to April 1, 1944, for checking purposes.
"(Signed)
 Anthony J. Schneiders
"District Commodity Investigator
"Office of Price Administration."

On January 4, 1945, the defendant filed this motion to suppress the evidence obtained by the O.P.A. Investigator, claiming that it was obtained in violation of the Fourth and Fifth Amendments to the United States Constitution. The Government claims that it does not intend to use either the original sales slips or copies of them as evidence, and it is the claim of the Office of Price Administration that the sales, slips have long since been returned to the defendant. It is the claim of both the United States District Attorney's Office

and the Office of Price Administration that neither of them have the sales slips in question. While the arguments have covered a wide field, it appears that the defendant's contentions are two in number, (1) that the Office of Price Administration had no legal right to inspect his gasoline sales record. And, (2) that even though the Government does not intend to use the sales slips or copies of them as evidence, that the Government obtained information from the sales slips which enabled it to find other evidence which it will use at the trial. It should be noted that the Government claims that the inspection of the sales slips and the taking of them for examination was entirely voluntary so far as the defendant and his wife were concerned, the investigator having had a conversation with the defendant previously. However, since the ruling is based on other grounds, it is not necessary to make a finding on that issue.

The statutory authority for rationing is found in Title III of the Second War Powers Act, 50 U.S.C.A.Appendix § 633, Subsection 2(a) (2), which provides: "Whenever the President is satisfied that the fulfillment of requirements for the defense of the United States will result in a shortage in the supply of any material or of any facilities for defense or for private account or for export, the President may allocate such material or facilities in such manner, upon such conditions and to such extent as he shall deem necessary or appropriate in the public interest and to promote the national defense."

Title III of the Second War Powers Act with certain other titles was extended to December 31, 1945, by Public Law 509 of the 78th Congress. Chapter 614—2d Session, 50 U.S.C.A.Appendix § 645. In the Second War Powers Act, 50 U.S.C.A.Appendix § 633, Subsection 2(a) (5), it is provided: "Any person who willfully performs any act prohibited, or willfully fails to perform any act required by, any provision of this subsection (a) or any rule, regulation, or order thereunder, whether heretofore or hereafter issued, shall be guilty of a misdemeanor, and shall, upon conviction, be fined not more than $10,000 or imprisoned for not more than one year, or both."

Under the Second War Powers Act, Ration Order No. 5C (7 Federal Register 9135) was issued, which prohibits a dealer in gasoline from transferring or selling gasoline without receiving gasoline ration

coupons equal in gallonage value to the gasoline so transferred.

The power to fix maximum prices is found in the Emergency Price Control Act, 50 U.S.C.A.Appendix § 901 et seq. This Act was extended to June 30, 1945, by Public Law 383, 78th Congress, 2nd Session, 50 U.S.C.A.Appendix § 901. Under 50 U.S.C.A.Appendix § 904(a) of that Act, it is provided that it shall be unlawful for any person to sell or deliver any commodity in violation of any regulation or order fixing or establishing price schedules thereunder. The maximum price at which the particular gasoline the defendant was handling was prescribed and established by Section 7.4 of Maximum Price Regulation No. 88 (9 Federal Register 1783). Under 50 U.S.C.A.Appendix § 925(b) criminal penalties are provided for violation of the Emergency Price Control Act.

Under the Second War Powers Act, 50 U.S.C.A.Appendix § 633, Subsection 2(a) (3), it is provided: "The President shall be entitled to obtain such information from, require such reports and the keeping of such records by, make such inspection of the books, records, and other writings, premises or property of, any person * * and make such investigations, as may be necessary or appropriate, in his discretion, to the enforcement or administration of the provisions of this subsection (a)."

Under the Emergency Price Control Act, 50 U.S.C.A.Appendix § 922(b), it is provided that: "The Administrator is further authorized, by regulation or order, to require any person who is engaged in the business of dealing with any commodity * * * to furnish any such information under oath or affirmation or otherwise, to make and keep records and other documents, and to make reports, and he may require any such person to permit the inspection and copying of records and other documents * * *. The Administrator may administer oaths and affirmations and may, whenever necessary, by subpena require any such person to appear and testify or to appear and produce documents, or both, at any designated place."

The keeping of records in regard to the sales of gasoline is required by regulations under both the Second War Powers Act and under the Emergency Price Control Act.

The immunity provisions of the Second War Powers Act and of the Emergency Price Control Act read differently. Under 50 U.S.C.A.Appendix § 633, Subsection 2 (a) (4), it is provided: "No person shall be excused from attending and testifying or from producing any books, records, or other documentary evidence or certified copies thereof or physical evidence in obedience to any such subpena, * * * on the ground that the testimony or evidence, documentary or otherwise, required of him may tend to incriminate him or subject him to a penalty or forfeiture; but no individual shall be subject to prosecution and punishment or to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled to testify or produce evidence, documentary or otherwise, after having claimed his privilege against self-incrimination, * * *."

Under the Emergency Price Control Act, 50 U.S.C.A.Appendix § 922(g), it is provided: "No person shall be excused from complying with any requirements under this section because of his privilege against self-incrimination, but the immunity provisions of the Compulsory Testimony Act of February 11, 1893 (U.S.C., 1934 edition, title 49, sec. 46), shall apply with respect to any individual who specifically claims such privilege."

The Compulsory Testimony Act referred to appears in 49 U.S.C.A. § 46, relating to proceedings of the Interstate Commerce Commission and provides in part as follows: "No person shall be excused from attending and testifying or from producing books, papers, tariffs, contracts, agreements, and documents before the Interstate Commerce Commission, or in obedience to the subpœna of the commission, * * * or in any cause or proceeding, criminal or otherwise, based upon or growing out of any alleged violation of chapter 1 of this title on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him, may tend to criminate him or subject him to a penalty or forfeiture. But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify, or produce evidence, documentary or otherwise, before said commission, or in obedience to its subpœna, or the subpœna of either of them, or in any such case or proceeding."

The immunity provisions set out all have reference to cases where a party is

being compelled to testify, or produce evidence. In the instant case the defendant is not being called or subpœnaed to testify or compelled to produce his books and records so those questions are not involved. The questions that are involved are whether the requirement that the defendant keep records as to his transactions in gasoline and the requirement that such books be open to inspection by government representatives are in violation of the Fourth Amendment providing that: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *," or the Fifth Amendment providing that "No person * * * shall be compelled in any Criminal Case to be a witness against himself." The question would seem to narrow itself still further to the question of the right of inspection of books and records. For if there is the right of inspection of books and records, whether the original books and records themselves were subpœnaed or otherwise brought into court would not be of vital importance in most cases because of another rule of law. It is the well settled law that in a criminal proceeding that if documentary evidence is shown to be in the possession of the defendant, that secondary evidence of the contents of such documents can be put in evidence without further showing. 22 C.J.S., Criminal Law, § 706, p. 1199. A notice to a defendant in a criminal action to produce the original documents as a preliminary to introduction of secondary evidence of their contents is held to be in violation of defendant's rights against self-incrimination. McKnight v. United States, 6 Cir., 1902, 115 F. 972. See also, United States v. Buckner, 2 Cir., 1940, 108 F.2d 921, 929. Further, an inspection of the records would in a good many cases disclose places where evidence could be obtained so that the Government could establish criminal guilt without need of the contents of the records. The United States Supreme Court has emphatically laid down the rule that the Government cannot use evidence against a defendant, the knowledge of which evidence had its origin in the invasion of the defendant's rights, and is the fruit of a "poisonous tree". Nardone v. United States, 1939, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307. Thus, the question comes back to the question of whether Congress has the right during the period involved in the present case to require the defendant as a dealer in gasoline to keep a record of his dealings in that commodity and require such records to be open to inspection by Government inspectors. The right of Congress in the exercise of its war powers to conserve and preserve commodities necessary, critical and vital to the defense of the nation would seem to be unquestioned. L. P. Steuart & Bro. v. Bowles, 1944, 322 U.S. 398, 64 S.Ct. 1097, 88 L.Ed. 1350; Bowles v. Jacobson, 5 Cir., 1944, 145 F.2d 975. See also, People v. Sell, 1945, 310 Mich. 305, 17 N.W.2d 193. That gasoline is a commodity necessary and vital to the war effort would also seem to be beyond question. Bowles v. Jacobson, supra. In this last case the Fifth Circuit Court of Appeals, on page 975 of 145 F.2d, very strikingly states the situation in regard to motor fuels: "Our soldiers are feeding ammunition at this very hour into steel-lipped guns, and they must rely upon us to see to it that they receive this ammunition promptly, and along with it food supplies and equipment. This means that fuel oils for motor vehicles carrying these supplies to our soldiers must be preserved, whatever the cost. The very life of our Republic depends upon preserving war needs of which this fuel comprises a vital part." Self-preservation in addition to being the first law of nature is the first law of nations, especially nations engaged in war with aggressor nations, in which defeat means subjection and slavery and the loss of all rights and liberties.

■ Congress has the power if it considered it necessary for national defense to have taken over the entire handling of gasoline and handled it through government establishments. Brown v. Wilemon, 5 Cir., 1944, 139 F.2d 730. Commencing on page 731 of the opinion in this last case the Fifth Circuit Court of Appeals referring to the distribution of gasoline states: "The distribution to civilian consumers might have been made through government establishments which would have put all filling stations out of business for the period of rationing. Instead of doing that, the filling stations were required to register as distributors and to make reports from which the operation of rationing could be checked. Though no license was issued, such was the effect of the arrangement; and by acceptance of it the filling station operators impliedly agreed to abide by the regulations. They became in effect the ap-

pointees of the government to assist in the administration of the rationing."

The important part that such distributors play in the conservation of gasoline has been pointed out by the United States Supreme Court in the case of L. P. Steuart & Bro. v. Bowles, supra, 322 U.S. on page 405, 64 S.Ct. on page 1100, 88 L.Ed. 1350, where that Court states: "But middlemen —wholesalers and retailers—bent on defying the rationing system could raise havoc with it."

■ Persons are free to engage or not engage in the handling of commodities vital and necessary to the national defense, but when Congress within the scope of its powers has made provisions attaching conditions to the engaging in such transactions, then those who do engage in such transactions cannot accept the benefits thereof and reject the burden of conditions attached thereto. During the present war all who engage in the handling of gasoline do so upon the condition that they keep a record of their transactions in that commodity and that such records shall be open to governmental inspection.

■ The power to regulate or supervise a business carries with it the power to require those engaging in that business to keep records. Fleming v. Montgomery Ward & Co., 7 Cir., 1940, 114 F.2d 384, certiorari denied 311 U.S. 690, 61 S.Ct. 71, 85 L.Ed. 446; Di Santo v. United States, 6 Cir., 1937, 93 F.2d 948, certiorari denied 303 U.S. 662, 58 S.Ct. 829, 82 L.Ed. 1121; Rodgers v. United States, 6 Cir., 1943, 138 F.2d 992; United States v. Tire Center, Inc., D.C.Del.1943, 50 F.Supp. 404. If persons engaged in business subject to governmental regulation could not be required to keep books, it would confer practical immunity from regulation and render the attempted regulation futile and nugatory. Rodgers v. United States, supra; United States v. Mulligan, D.C.N.Y.1920, 268 F. 893. The requirement that one engaged in handling commodities under government regulation be required to keep records would be rendered futile and nugatory if there was no right of inspection of such records by the proper governmental representatives. Wilson v. United States, 1910, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558. In this last case, on page 380 of 221 U.S., on page 544 of 31 S.Ct., the Court speaking through Mr. Justice Hughes states (italics supplied): "Thus, in the case of public records and official documents, made or kept in the administration of public office, the fact of actual possession or of lawful custody would not justify the officer in resisting inspection, even though the record was made by himself and would supply the evidence of his criminal dereliction. If he has embezzled the public moneys and falsified the public accounts, he cannot seal his official records and withhold them from the prosecuting authorities on a plea of constitutional privilege against self-crimination. *The principle applies not only to public documents in public offices, but also to records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation, and the enforcement of restrictions validly established."*

■ The requirement that those engaged in businesses or the handling of commodities subject to governmental regulation should keep records relating thereto is not in violation of the Fifth Amendment against self-crimination. Wilson v. United States, supra, 221 U.S. at page 380, 31 S. Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558; United States v. Mulligan, supra; Di Santo v. United States, supra. In the case of Wilson v. United States, supra, Mr. Justice Hughes cites a number of cases from State Courts, all upholding the right of States in their regulations of certain businesses to require the keeping of records. Among other cases, Mr. Justice Hughes cites the Iowa cases of State v. Smith, 1888, 74 Iowa 580, 38 N.W. 492; and State v. Cummins, 1888, 76 Iowa 133, 40 N.W. 124. However, it should be noted in connection with the Iowa cases, that Iowa and New Jersey are the two states that do not have specific provisions against self-incrimination in their constitutions. The requirement that records of business or transactions subject to governmental regulation shall be open to inspection to proper governmental representatives does not violate the provisions of the Fourth Amendment prohibiting unreasonable search and seizures. Cudmore v. Bowles, App.D.C.1944, 145 F.2d 697, certiorari denied 65 S.Ct. 588; C. M. Spring Drug Co. v. United States, 8 Cir., 1926, 12 F.2d 852, 857; Bowles v. Joseph Denunzio Fruit Co., D.C.Ky.1944, 55 F.Supp. 9; United States v. Mulligan,

910

supra; Bowles v. Stitzinger, D.C.Pa.1945, 59 F.Supp. 94. The provisions of the Fourth Amendment relate to private and personal papers of a person. Wilson v. United States, supra, 221 U.S. at page 380, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558; United States v. White, 1944, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542. Records kept by a person under requirement of law are not private and personal records, but are quasi-public records to which the immunity of the Fourth Amendment is not applicable. Wilson v. United States, supra; Bowles v. Joseph Denunzio Fruit Co., supra; C. M. Spring Drug Co. v. United States, supra; Rodgers v. United States, supra; Bowles v. Chew, D.C.Cal.1944, 53 F.Supp. 787. In the case of Wilson v. United States, supra, 221 U.S. on page 380, 31 S.Ct. on page 544, 55 L.Ed. 771, Ann. Cas.1912D, 558, Mr. Justice Hughes in regard to such records said: "There the privilege which exists as to private papers cannot be maintained." In the case of C. M. Spring Drug Co. v. United States, the Eighth Circuit Court of Appeals in dealing with the matter of records required to be kept by a druggist which had been seized by the Government, on page 857 of 12 F.2d, states: "The record clearly shows * * * that they were preserved for the purpose of record in conformity with an act of Congress, and that, by the provisions of the law under which they were kept, the federal officers were entitled to access to them at all times. We think they were not private papers of the drug company or any other defendant." In the case of Rodgers v. United States, supra, 138 F.2d on page 996 the Court states: "The records and reports required by the statute and regulations here in question are quasi-public documents and not for appellant's private use. They are for the benefit of the public and are open to inspection by such persons and officers as are authorized under the statute to inspect them."

 ·The defendant strongly relies upon the case of Brown v. Glick Bros. Lumber Co., D.C.Cal.1943, 52 F.Supp. 913, in which a motion to suppress was sustained. However, that case has heretofore been reversed on appeal and can no longer be considered as an authority. Bowles v. Glick Bros. Lumber Co., 9 Cir., Jan. 4, 1945, 146 F.2d 566. See also, Bowles v. Ray et al., 9 Cir., 146 F.2d 652.

The motion of the defendant to suppress is overruled.