**BOWLES, Price Administrator, v. MISLE.**
**Civil Action No. 490.**

District Court, D. Nebraska,
Lincoln Division.
March 9, 1946.

836

Edwin F. Moran, of Nebraska City, Neb., W. S. Wingerd, of Omaha, Neb., and Allen Wilson, of Lincoln, Neb., for plaintiff.

Robert VanPelt, of Lincoln, Neb., and Thomas J. Dredla, of Crete, Neb., for defendant.

DELEHANT, District Judge.

The plaintiff's complaint charges the defendant, as the owner and operator of an automobile repair business, with the demand for, and receipt of, prices for the services of his business in excess of those allowable under Revised Maximum Price Regulation No. 165, as amended (9 F.R. 7439), promulgated in pursuance of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix §§ 901–971, and with certain acts of omission violative of the regulation. It prays for injunctive relief and for judgment for an appropriate sum of money based on the alleged overcharges, within the contemplation of 50 U.S.C.A.Appendix § 925(e).

With a view to procuring and presenting proof of the alleged violations and the extent thereof, the plaintiff has filed a motion requesting an order, under Rule 34 of the Federal Rules of Civil Procedure, 28 U.S.C.A., following section 723c, requiring the defendant to produce, make available and permit the inspection and copying of, the records, books and accounts of the defendant relevant to the issue, including specifically, (a) sales invoices showing services and prices during the year 1945 (which does not exactly correspond to the period of violation specified in the complaint); (b) sales records showing the highest prices charged for like services during March 1942, with substantiating invoices; (c) prepared copy or copies of the filing statement required by the regulation mentioned; and (d) copies of flat rate manuals used by the defendant in determining hourly time for services performed and charged to customers. The records and papers sought are unquestionably such as the statute and the regulation require to be kept and exhibited as an imperative incident to the regulatory and administrative service.

Resisting the motion, the defendant has filed a written claim of privilege in which he asserts that, by virtue of 50 U.S.C.A.Ap-

pendix Section 922(g), he is entitled to the immunities provided by the compulsory Testimony Act of February 11, 1893, 49 U.S. C.A. § 46; and also that the granting of the motion would be violative of his rights severally guaranteed under the fourth and fifth amendments to the constitution of the United States. The court does not understand that the motion is otherwise assailed. The constitutional claim has been submitted upon oral argument and briefs; and counsel are entitled to an orderly statement of the court's ruling, and of some, at least, of the considerations that prompt it.

The discovery and production which the motion asks are sought entirely under Rule 34, in the course of the prosecution of a civil action pending in this court. The controversy does not involve any demand for an order of the court directing the observance of the requirements of an administrative order or subpoena within the grant of jurisdiction made in 50 U.S.C.A.Appendix § 922(e). It is true that, in his motion, the plaintiff refers to 50 U.S.C.A.Appendix § 922(b); but the court considers that citation to be merely a reminder to the court of the statute's provision touching the maintenance and availability of such records and the administrator's right to their scrutiny. Thus regarded, though its pleading is not technically necessary, it serves to disclose the materiality and presumed custody of the papers at which the motion is aimed.

Protection is claimed by the defendant under the fourth amendment of the constitution because of the language: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized"; and under the fifth amendment, by reason of the sentence: "No person * * * shall be compelled in any Criminal Case to be a witness against himself."

The cited Compulsory Testimony Act of February 11, 1893, originally designed to facilitate the investigatory and regulatory service of the Interstate Commerce Commission, is rooted in the quoted amendment, especially the fifth. Its material language follows: "No person shall be excused from attending and testifying or from producing books, papers, tariffs, contracts, agreements and documents before the Interstate Commerce Commission, or in obedience to the subpoena of the Commission, whether such subpoena be signed or issued by one or more Commissioners, or in any cause or proceeding, criminal or otherwise, based upon or growing out of any alleged violation of the act of Congress, entitled, 'An act to regulate commerce,' approved February fourth, eighteen hundred and eighty-seven, or of any amendment thereof on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him, may tend to criminate him or subject him to a penalty or forfeiture. *But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify, or produce evidence, documentary or otherwise, before said Commission, or in obedience to its subpoena, or the subpoena of either of them, or in any such case or proceeding.*" (Italics added and text taken from 27 Stat. 443, 49 U.S.C.A. § 46.) 50 U.S. C.A.Appendix § 922(g), which is said to import the emphasized immunity into the Emergency Price Control Act of 1942, is in this language: "No person shall be excused from complying with any requirements under this section because of his privilege against self-incrimination, but the immunity provisions of the Compulsory Testimony Act of February 11, 1893 * * * shall apply with respect to any individual who specifically claims such privilege."

The Compulsory Testimony Act will hardly be said to enlarge the immunities guaranteed by the fourth and fifth amendments to the constitution. On the contrary, within its limited area, it thwarts the strictly silencing consequence and documentary cloture otherwise consequent upon those amendments, while strictly preserving their protection from criminal prosecution in consequence of the revelation which it compels.

In a fair appraisal of the scope of 50 U.S.C.A.Appendix § 922(g) lately quoted, two quite narrow considerations seem to the court to suggest persuasively the rejection of the defendant's challenge, to the extent that it is based upon the incorporated immunity provisions of the Compulsory Testimony Act of February 11, 1893.

█ It will be observed, in the first place, that the incorporation by reference of the immunity provisions of the Act of February 11, 1893, is a corollary to the denial of excuse, by reason of the privilege against self-

incrimination, *from complying with any requirements under Section 922, of which it is a part.* Now, those requirements include (a) the furnishing to the administrator of information, proper or necessary in the prescription of regulations or in the administration or enforcement of the Emergency Price Control Act; (b) the making and keeping of records and other documents and the making of reports; (c) the permission of the inspection and copying of records and other documents, and of the inspection of inventories or defense-area housing accommodations; (d) and the compliance with administrative subpoenas issued to require performance of the foregoing duties. Unlike the premising and underlying sentences already quoted from the Compulsory Testimony Act, the instant Act deals only with the administrative office, and does not even assume to intrude into or provide a rule of evidence in judicial proceedings, whether civil or criminal, pending in a regularly established court, in consequence of the violation of the act. If the present issue had arisen in a proceeding, brought under 50 App. U.S.C.A.Appendix § 922(e), to obtain an order requiring compliance with an administrative subpoena, the immunity accorded under subsection (g) of the same section would be directly involved; though, for reasons which will be set down later, it would not intercept the inquiry. But to this purely judicial action the immunity is simply inapplicable, in consequence of its own terms.

■ The second consideration fatal to the claim that the statutory immunity requires the denial of the plaintiff's motion arises from the nature of the prayer of the complaint. Even if the material sought by the motion were, in the circumstances of its procurement, inadmissible as evidence in support of the demand for a money judgment, it would not reasonably seem to be inadmissible upon the prayer for injunctive relief. Such relief can hardly be comprehended within the definition of "a penalty or forfeiture". And, being competent for any purpose the pursuit of the papers should not be denied. The limits, if any there be, upon their probative use should be set on the occasion of their presentation at the trial, or perhaps by a preliminary order in the light of the issue or issues ultimately to be tried.

But those reflections do not come to grips with the radical issue of the availability as testimony, of the material sought,

in the face of the quoted prohibition of the fifth amendment. That is the vital question, however it be presented. For if the amendment warrants the defendant's objection to the motion, tendered as it is in a judicial proceeding, this court finds nothing in 50 U.S.C.A.Appendix § 922(g) which is adequate to nullify the silencing obstacle of the amendment and remit the defendant to the incorporated immunity of the earlier Compulsory Testimony Act. The asserted immunity under the fourth amendment will require only brief specific treatment, beyond the references to it in many of the cases to which citation will shortly be made.

The fundamental question before the court is not novel. It has been considered frequently in reported opinions, first in its impact upon litigation arising under other legislation involving extra-judicial administration and adjudication, and more recently in many rulings in varied circumstances under the Emergency Price Control Act of 1942. It may not be asserted that the judicial discussions upon it are entirely harmonious. But the overwhelming weight of authority favors the position of the plaintiff. With no effort adequately to collect or summarize the applicable cases, some of them will presently be noted.

■ Certain preliminary observations are in order. Some of the cases to be cited concerned both corporate and individual defendants; others involved only corporations. Now, corporations are not within the protection of the immunity against self-incrimination of the fifth amendment. So, the court may be considered to be quite aware of the distinction from the present issue of so much of the opinions involving corporations as deny them such immunity upon the score of their corporate character. Those cases will be referred to solely in consequence either of their discussion of other actually existing grounds of decision, or of their rulings respecting the plight of individuals yoked with corporations as defendants. This distinction will not again be adverted to.

■■ But corporations are within the protection of the fourth amendment against unreasonable searches and seizures. However, it need not be emphasized that the amendment forbids not all searches and seizures, but only those that are unreasonable. And the pursuit of available, competent and relevant evidence, known or legally presumed to exist and to be in a party's possession is not unreasonable. In passing,

it may be said that there is more than slight question whether any real search or seizure within the constitutional intendment is involved here. But in the light of the court's conclusion, the question need not be answered.

Then, too, some of the cited cases arose upon administrative recourse to the court for orders requiring compliance with extra-judicial subpoenas. But their opinions are considered to be instructive upon the constitutional admissibility, in any posture, of the evidence sought.

In Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, often cited in support of the applicability of the fifth amendment, the court first broadly construed the phrase "any criminal case," to include a proceeding for the forfeiture of goods imported in violation of the customs laws of the United States, and then held that in such a suit the alleged violator might not be compelled to produce as evidence his private books and papers. However, emphasis was heavily placed upon the attribute of privacy as a prerequisite to the constitutional immunity. See also Ballmann v. Fagin, 200 U.S. 186, 26 S.Ct. 212, 50 L.Ed. 433; Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652.

Even more sharply, the Supreme Court, in Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558, emphasized the rule that papers within the immunity from use as testimony under the fifth amendment must be such as are really private, and excluded from its protection those books, documents and papers that may properly be regarded as public or quasi-public. It was there held, specifically, that a corporate officer might not, under the amendment, refuse to produce the corporate books within his custody and keeping on the ground that they would incriminate him; and the availability to public inspection of corporate books was emphasized. Among the many authorities relied upon by the court in support of its ruling were cases dealing with the books of a delinquent vestry clerk, Bradshaw v. Murphy, 7 C. & P. 612; the records of a state dispenser which he was required by law to keep, State v. Farnum, 73 S.C. 165, 53 S.E. 83; druggists' records kept by legal requirement touching sales of liquor, State v. Donovan, 10 N.D. 203, 86 N.W. 703; and the compounding of prescriptions, State v. Davis, 108 Mo. 666, 18 S.W. 894; State v. Davis, 68 W.Va. 142, 69 S.E. 639, 32 L.R.A., N.S., 501, Ann.Cas.1912A, 996; railroad tariff sheets posted as required by law, Louisville & N. R. Co. v. Commonwealth, 21 Ky.Law Rep. 239, 51 S.W. 167; and statements of druggists respecting liquor sales, periodically prepared and filed with public authority by legal requirement. State v. Smith, 74 Iowa 580, 38 N.W. 492; State v. Cummins, 76 Iowa 133, 40 N.W. 124; People v. Henwood, 123 Mich. 311, 82 N.W. 70. Interestingly, the Supreme Court in the Wilson case said [221 U.S. 361, 31 S.Ct. 545]: "The fundamental ground of decision in this class of cases is that where, by virtue of their character and the rules of law applicable to them, the books and papers are held subject to examination by the demanding authority, the custodian has no privilege to refuse production although their contents tend to criminate him. In assuming their custody he has accepted the incident obligation to permit inspection." And again: "But the physical custody of incriminating documents does not of itself protect the custodian against their compulsory production. The question still remains with respect to the nature of the documents and the capacity in which they are held. It may yet appear that they are of a character which subjects them to the scrutiny demanded and that the custodian has voluntarily assumed a duty which overrides his claim of privilege. This was clearly implied in the Boyd case, where the fact that the papers involved were the *private* papers of the claimant was constantly emphasized. Thus, in the case of public records and official documents, made or kept in the administration of public office, the fact of actual possession or of lawful custody would not justify the officer in resisting inspection, even though the record was made by himself and would supply the evidence of his criminal dereliction. If he had embezzled the public moneys and falsified the public accounts, he cannot seal his official records and withhold them from the prosecuting authorities on a plea of constitutional privilege against self-crimination. (Ensuing emphasis added). *The principle applies not only to public documents in public offices, but also to records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation, and the enforcement of restrictions validly established. There the privilege, which exists as to private papers, cannot be maintained."*

Upon the same general theme, see also: Interstate Commerce Commission v. Goodrich Transit Co., 224 U.S. 194, 32 S.Ct. 436, 56 L.Ed. 729; Wheeler v. United States, 226 U.S. 478, 33 S.Ct. 158, 57 L.Ed. 309; Essgee Co. v. United States, 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917; United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542, 152 A.L.R. 1202; and the very recent case of Oklahoma Press Publishing Co. v. Walling, 66 S.Ct. 495.

Deferring briefly the consideration of cases directly arising out of the Emergency Price Control Act of 1942, it may be observed that the courts have almost invariably held that books and records kept for public inspection in compliance with valid regulatory legislation are not such private records as may be guarded against judicial examination under the fifth amendment, or by way of corollary, under the fourth amendment. Cudahy Packing Co. v. Fleming, 8 Cir., 122 F.2d 1005 (reversed on other grounds); Walling v. Benson, 8 Cir., 137 F.2d 501, 149 A.L.R. 186; Fleming v. Montgomery Ward & Co., 7 Cir., 114 F.2d 384; and Oklahoma Press Publishing Co. v. Walling, supra, all involving the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq.; Endicott Johnson Corporation v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L. Ed. 424 (affirming 128 F.2d 208), in which the decision upon the pertinence of the fourth and fifth amendments is implicit rather than express, the question being dismissed as requiring no discussion; Bartlett Frazier Company v. Hyde, 7 Cir., 65 F.2d 350 (certiorari denied Bartlett Frazier Co. v. Wallace, 290 U.S. 654, 54 S.Ct. 70, 78 L.Ed. 567), involving the Grain Futures Act of September 21, 1922, 7 U.S.C.A. §§ 1–17; President of United States v. Skeen, 5 Cir., 118 F.2d 58 (though constitutional limitations under the fourth and fifth amendments are not discussed), involving the Connally Oil Act, 15 U.S.C.A. § 715 et seq.; Guckenheimer & Bros. v. United States, 3 Cir., 3 F.2d 786, involving papers submitted to prohibition officers by a federally licensed wholesale liquor dealer; Baltimore & Ohio Railroad Co. v. Interstate Commerce Commission, 221 U.S. 612, 622, 623, 31 S.Ct. 621, 627, 55 L.Ed. 878, involving the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq. in which the court, speaking with reference to the claim of privilege of the individual parties, said: "The transactions to which the required reports relate are corporate transactions, subject to the regulating power of Congress. And, with regard to the keeping of suitable records of corporate administration, and the making of reports of corporate action, where these are ordered by the Commission under the authority of Congress, the officers of the corporation, by virtue of the assumption of their duties as such, are bound by the corporate obligation, and cannot claim a personal privilege in hostility to the requirement"; United States v. Mulligan, D.C.N. Y., 268 F. 893, a carefully reasoned opinion involving the Lever Act; Spring Drug Co. et al., v. United States, 8 Cir., 12 F.2d 852, involving the Harrison Narcotic Act; and Rodgers v. United States, 6 Cir., 138 F.2d 992, 995, involving the Agricultural Adjustment Act, 7 U.S.C.A. § 1281 et seq.

From the opinion last cited is quoted the following language which seems directly pertinent to the present inquiry:

"The constitutional privilege against self-incrimination is not all-inclusive. There is excluded therefrom papers, records and reports required by law to be kept and made in order that suitable information may be obtained of transactions which are appropriate subjects of governmental regulations.

"The records and reports required by the statute and regulations here in question are quasi-public documents and not for appellant's private use. They are for the benefit of the public and are open to inspection by such persons and officers as are authorized under the statute to inspect them. * * *

"Unless the distinction between private records and papers and quasi-public records and papers is kept in mind in applying the Fourth Amendment, it will be difficult to regulate business subject to congressional intervention under the Constitution. To relieve those engaged in business subject to public regulation of the obligation to keep records and make reports would place an unnecessary burden on the government and extend to individuals an immunity not within the concept of the constitutional prohibition against self-incrimination. Di Santo v. United States, 6 Cir., 93 F.2d 948.

"Persons to whom the Act and regulations here in question are applicable are advised, in advance of the necessity of making reports and entries on their books and that such records and reports are to be used primarily for the enforcement of the statute.

"The keeping of records and the making of reports under the statute of which appellant complains have none of the characteristics of entrapment, invasion of the right of privacy or unjust coercion of individuals, which are the genesis of the Fourth Amendment. The so-called penalties under the present Act are merely incidental to the reports. They are not imposed for failure to make the reports."

Of Oklahoma Press Publishing Co. v. Walling, 10 Cir., 147 F.2d 658-661, cited by the defendant, it will be sufficient to note that the cautionary language cited from it emphasizing private security cited here by the defendant, which was itself quoted from an earlier opinion, was by the circuit court regarded as one extreme of the considerations that should govern the courts in their rulings upon administrative inquiry, the counter balancing considerations being, that constitutional provisions prohibiting unreasonable search and seizure, "must be construed so as to serve the public interest as well as individual rights. * * * Especially is this true where, as here, the law regulates that which it seeks to investigate"; and that that court required compliance with the subpoena before it. But even more decisive is the language of the Supreme Court in its affirmance of that ruling in Oklahoma Press Publishing Co. v. Walling, 66 S.Ct. 495.

Jones v. Securities & Exchange Commission, 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015, is also cited by the defendant. In its actual ruling there seems to be no obstacle to the plaintiff's present quest. It is true that notable rhetorical exercises characterize both the prevailing and the minority opinions in that case, and that they need not presently be balanced, one against the other. But the possibility, though not certainty, that the dissenting reasoning may currently be approved in the forum where the case was finally heard, lurks in several of the observations, citations and quotations in Oklahoma Press Publishing Co. v. Walling, 66 S.Ct. 495.

And now to the cases arising out of the law involved in this action. Quite naturally most of them are found in District Court opinions. Time and the nature of the instant question conspire to that end. They are not all favorable to the present position of the plaintiff, but by far their greater number incline in that direction.

Bowles v. Chu Mang Poo, D.C.Cal., 58 F.Supp. 841, assumes, but does not decide, that a suit for injunction and triple damages is one for a penalty. But, upon a plea in abatement on the ground of the procurement under compulsion of evidence, the court also found that the necessary compulsion was not shown and denied the plea. The same judge who wrote that opinion, in the slightly later case of Bowles v. Trowbridge, D.C.Cal., 60 F.Supp. 48, squarely held suits of this character to be penal, and therefore criminal in character, and sustained objections to interrogatories addressed to the defendant as violative of the fifth amendment to the constitution. But the Trowbridge case involved compulsory personal testimony, not the production of documents, as the judge therein clearly declared in the course of his distinction of his case from Bowles v. Glick Brothers Lumber Co., 9 Cir., 146 F.2d 566. Bowles v. Cherokee Textile Mills, D.C.Tenn., 61 F.Supp. 584, sometimes cited to sustain the position now taken by the defendant, is inadequate for that purpose. It merely denied, pending an evidentiary showing of materiality, an administrator's action to enforce compliance with a subpoena duces tecum. (This court does not pause to discuss the propriety of that ruling.) The court has carefully examined the case of Bowles v. Bronson, D.C. Or., 63 F.Supp. 189, in which enforcement of an administrative subpoena was denied, first, because a separate suit for treble damages was pending between the same parties in which recourse to Rule 34 might be had, and secondly and particularly, because, theretofore, the administrator had had general access to the defendant's books and records. Not the ruling so much as the court's discussion is sharply critical of the position which the administrator assumes here. But that discussion loses any persuasiveness before this court, first, because of its manifest temper; secondly, by reason of the conclusive rejection in other cases of its premises (see especially Oklahoma Press Publishing Co. v. Walling, supra, and finally, by reason of the opinion of the same judge in Bowles v. Richards, D.C.Or., 63 F.Supp. 946. Comment beyond the mere citation of the case last mentioned would be superfluous. Two district court cases sustaining at least in some measure the defendant's position, Brown v. Glick Bros. Lumber Co., D.C.Cal., 52 F.Supp. 913, and Bowles v. Beatrice Creamery Co., D.C. Wyo., 56 F.Supp. 805, have been directly reversed upon appeal.

Cudmore v. Bowles, App.D.C., 145 F.2d 697 is sometimes cited as supporting the

plaintiff's position. It is believed, however, that its careful reading will reveal that the administrator's favorable ruling in that case which concerned the enforcement of an administrative subpoena duces tecum was placed upon the ground that under 50 U.S.C.A.Appendix § 922(g) the defendant might not claim immunity from compliance. But it might well be argued that by the same reasoning, he might defend, upon the score of the immunity referred to in Section 922(g), a suit subsequently instituted regarding the subject matter of the inquiry. This court, therefore, is disposed to regard the cited case as a potential, though not maturely reasoned, authority for the defendant in a case of the present sort.

On the other hand many cases have squarely affirmed the right of the administrator to secure evidence of the character now sought, unencumbered by the immunity of the fifth amendment. And, of course, if the material sought is not immune from production as evidence, its quest by proper means involves no unreasonable seizure under the fourth amendment.

In Bowles v. Glick Bros. Lumber Co., 9 Cir., 146 F.2d 566, 571 (reversing Brown v. Glick Bros. Lumber Co., D.C., 52 F.Supp. 913), the court held that evidence of the kind here sought is receivable in an action for triple damages. Its final comment upon the point is, "We conclude that the inspection conducted in this instance was authorized by statute and by valid regulation and that it did not violate any of the rights of the defendants under the Fourth or Fifth Amendments. This is true whether the action be regarded as remedial or penal." A like result was reached in Bowles v. Beatrice Creamery Company, 10 Cir., 146 F.2d 774 (reversing 56 F.Supp. 805). In Bowles v. Insel, 3 Cir., 148 F.2d 91, the court required compliance with an administrator's investigatory subpoena upon the ground that the records sought were not such private records as are protected by the fourth amendment but were quasi-public in character. In United States v. Davis, 2 Cir., 151 F.2d 140, the defendant's conviction upon a charge of the unlawful possession of gasoline ration coupons was affirmed, in the face of his contention that the evidence for his conviction had been procured by a search of his premises without legal process. The court held the search to be "reasonable" in the circumstances and the coupons secured by it receivable in evidence. See also United States v. Tire Center, D.C.

Del., 50 F.Supp. 404; United States v. Strickland, D.C.S.C., 62 F.Supp. 468. The court, in Bowles v. Shawano National Bank, 7 Cir., 151 F.2d 749, sustained an administrative subpoena requiring a bank and another to produce the bank's records of certain customer's accounts bearing on their violation of rationing regulations, despite a statute providing for banks certain immunity to visitorial powers.

Judge Graven, with characteristic thoroughness, explored the authorities then published upon the present controversy, in United States v. Kempe, D.C.Iowa, 59 F.Supp. 905, and, in a criminal case, denied the defendant's motion to suppress evidence in the way of his records, upon the ground that those records being kept under the requirements of the statute and subject to examination were not within the protection of the fifth amendment. Like reasoning in suits for recovery of treble overcharges is found in Bowles v. Joseph Denunzio Fruit Co., D.C.Ky., 55 F.Supp. 9; Bowles v. Curtiss Candy Co., D.C.Mo., 55 F.Supp. 527, in which Judge Reeves carefully examined the applicable statutes and the decisions thereunder to the date of his opinion; Bowles v. Stitzinger, D.C.Pa., 59 F.Supp. 94; Bowles v. Kirk, D.C.Pa., 59 F.Supp. 97; and Bowles v. Amato, D.C.Colo., 60 F.Supp. 361. Whether alone, or in combination with the theory of the quasi-public character of the records involved, certain courts have supported similar rulings upon the conclusion that cases brought under the Price Control Act seeking personal judgments against violators are remedial, and not penal or criminal. Bowles v. Berard, D.C.Wis., 57 F.Supp. 94; Bowles v. Chew, D.C.Cal., 53 F.Supp. 787; Bowles v. Seitz, D.C.Tenn., 62 F.Supp. 773.

It appears, therefore, that especially where the issue has been directly presented and unequivocally determined, the federal courts, both district and appellate, have almost invariably denied immunity from administrative scrutiny and production in evidence to books and records kept in the course of business under the regulatory authority of the Office of Price Administration. That there is an observable disparity in the reasoning by which they severally reach their respective conclusions does not discredit the result.

Whether the position of those courts which decline to classify as penal, actions brought under 50 U.S.C.A.Appendix § 925 (e) to recover judgments based upon alleged

overcharges is well taken need not be, and is not, determined on this occasion. And the court does not assume to consider the collateral authorities which are instructive upon that question. If the cited position be well taken, it is, indeed, decisive unfavorably to the defendant, of the instant controversy.

But the broader ground of the public or semi-public character of the records and papers at which the motion is aimed is both the more uniformly asserted and the more surely tenable of the two theories. And with it, is and may well be, bracketed the further consideration that the immunities of the fourth and fifth amendments are not absolute but are rather subject to waiver and that he who enters into, or continues in, a business subject to official regulation voluntarily submits his business records and papers to such visitorial examination as the law contemplates, and, in that measure waives his constitutional immunities of privacy in respect of his papers and against compulsory testimony.

And, as many of the decisions reason, that result must follow. For if the regulating authority may be intercepted altogether at the door of a regulated business in its quest of information touching the observance of the law and applicable regulations, its ministry must be fruitless. And it can be no more effective if, realistically viewed, the administrator's examination may be made only at a bargain which absolves the proprietor of the business from the sanctions, whether civil or criminal, by law provided for such violations of the regulations, and, therefore, of the law as examination may disclose. And what is said of administrative examination applies in the present instance where the material is sought in aid of the administrator's suit already brought.

Although there is no challenge of the formality with which the plaintiff has made its request, the court has considered the questions of that character which any motion under Rule 34 involves.

Privilege and immunity aside, at least these questions arise: Has the moving party shown good cause for the motion? Has he properly, and with adequate particularity, designated the items for whose inspection and duplication he asks? Do those items probably constitute or contain evidence material to an issue in the case? Are they probably in the defendant's possession, custody or control? The court considers that in the light of the record here and of the Emergency Price Control Act of 1942, as amended, and the applicable regulation, all those questions are to be answered affirmatively. Presumptively, the law and the regulations supply any otherwise inadequately demonstrated elements of evidentiary materiality and custody.

Therefore, the claim of privilege is rejected and denied and the motion is granted.

In the preparation of the formal order care will be taken to reconcile any actual confusion of dates between which the records are to be furnished, of which one instance has already been noted. Within the contemplation of Rule 34, the order will also incorporate provisions touching the time, place, and manner of exercising the rights accorded to the plaintiff, including certain cautionary requirements which the court informally draws to the attention of counsel.

Counsel for the plaintiff will prepare an order in accordance with this announcement, submitting it to counsel for the defendant for approval as to form and as to the terms and conditions under which the right herein vindicated shall be exercised, and upon such approval, to the court for entry. In the event of disagreement the order shall be submitted to the court for settlement upon due written notice to counsel.

Upon the basis of this court's reasoning and discussion of authorities in Mitchell v. Brown, D.C.Neb., 2 F.R.D. 325, and United States v. Association of American Railroads, D.C.Neb., 4 F.R.D. 510, and without further present comment, the court, by a separate order which is filed herewith, also denies a request for bill of particulars filed by the defendant.

The clerk will transmit by United States mail copies of this memorandum to Messrs. Allen Wilson, Thomas J. Dredla and Robert VanPelt, the actively participating attorneys.